**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4220**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

       v.

PHILLIP DUCTAN,

              Defendant - Appellant.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Robert J. Conrad,
Jr., District Judge.  (3:04-cr-00252-RJC-DSC-1)

Argued:  May 13, 2015          Decided:  September 2, 2015

Before MOTZ, SHEDD, and DIAZ, Circuit Judges.

Vacated and remanded by published per curiam opinion.  Judge
Diaz wrote a separate concurring opinion.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH
CAROLINA, INC., Asheville, North Carolina, for Appellant.
William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY,
Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Ross
Richardson, Executive Director, FEDERAL DEFENDERS OF WESTERN
NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.
Anne M. Tompkins, United States Attorney, Erin E. Comerford,
Special Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

PER CURIAM:

Phillip Ductan appeals his convictions for conspiracy to possess with intent to distribute marijuana, possession with intent to distribute marijuana (and aiding and abetting the same), and carrying a firearm during and in relation to those drug trafficking crimes, in violation of 21 U.S.C. §§ 841 and 846, 18 U.S.C. § 2, and 18 U.S.C. § 924(c)(1). Ductan contends that the district court violated his Sixth Amendment right to counsel when it (1) required him to proceed pro se after finding that he had forfeited his right to counsel, and (2) subsequently removed him from the courtroom and chose a jury in his absence.

We hold that the magistrate judge erred in concluding that Ductan forfeited his right to counsel. And nothing in the record supports the government's alternate contention that Ductan waived—either expressly or impliedly—that right. Because the error is not harmless, we vacate Ductan's conviction and remand for a new trial.

I.

A.

In April 2004, a confidential informant told the Charlotte-Mecklenburg Police Department (the "CMPD") that Ductan had offered to sell him 100 pounds of marijuana. In response to the tip, the CMPD set up a controlled buy at a Cracker Barrel

2

restaurant in Charlotte, North Carolina. When the informant arrived, he was met by Ductan and two other men, Mark Lowery and Landis Richardson, who were seated in a Ford SUV. After Ductan showed the informant a package of marijuana, CMPD officers moved in to arrest the three men, prompting Ductan to throw a firearm on the ground and attempt to flee. The officers discovered other firearms at the scene, as well as a significant quantity of marijuana in Lowery's nearby SUV. Ductan was charged in North Carolina state court with trafficking in marijuana and carrying a concealed firearm, but the charges were dismissed.

B.

In September 2004, a federal grand jury indicted Ductan and his co-conspirators on charges of conspiracy to possess with intent to distribute marijuana (in violation of 21 U.S.C. § 846), possession with intent to distribute marijuana and aiding and abetting the same (in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2), and carrying a firearm during and in relation to a drug trafficking crime (18 U.S.C. § 924(c)(1)). An arrest warrant issued, but Ductan was not arrested until May 2012.

At his initial appearance before the magistrate judge, Ductan indicated that he had retained attorney Charles Brant to represent him. Brant, however, soon moved to withdraw, citing Ductan's uncooperativeness, refusal to sign a discovery waiver

3

as a precondition for the government providing written discovery, and lack of communication.

At the hearing on Brant's motion, the magistrate judge confirmed that Ductan no longer wanted Brant to represent him, and asked Ductan whether he wished to hire another lawyer or have the court appoint counsel. Ductan complained that it was difficult to find counsel while incarcerated, but insisted that he "d[id] not want to consent to having a lawyer appointed." J.A. 28. Ductan also told the judge that he did not want to represent himself.

After the judge explained that Ductan's options were to represent himself, hire new counsel, or ask the court to appoint counsel, Ductan began making nonsense statements, requesting "a form 226 form" and informing the court that he was "a secured party creditor." J.A. 29. The judge then instructed the prosecutor to summarize the charges and maximum penalties, but after the prosecutor finished, Ductan stated, "I do not understand what he is saying. I'm only here for settlement of the account." J.A. 33. The judge twice asked Ductan whether he was "under the influence of any alcohol or drugs," but Ductan gave nonsense responses. J.A. 34. The judge then told Ductan that he would not appoint a lawyer because "by making nonsense statements," Ductan could "be found to have waived [his] right

4

to counsel," although he directed the Federal Defender to appoint standby counsel.  J.A. 35.

Following the hearing, the magistrate judge issued an order granting Brant's motion to withdraw and summarizing the proceedings.  United States v. Ductan, No. 3:04-CR-252 (W.D.N.C. Oct. 5, 2012), ECF No. 142.  Although the judge noted that Ductan had not "knowingly and intelligently waived his right to counsel," he held that as a result of Ductan's frivolous arguments and evasive responses, Ductan had "forfeited his right to counsel in this matter."  Id. at 2.

A month later, Ductan's standby counsel Randy Lee moved to withdraw.  According to Lee, Ductan did not want Lee "to represent him in any capacity" and also refused to sign a discovery agreement. J.A. 42.  Lee explained that he was unable to adequately prepare for the case and would not be ready if asked to assist at trial.  Lee said that he would accept appointment as full-time counsel, but was not comfortable continuing as standby counsel.

At the hearing on Lee's motion to withdraw, Ductan complained that he did "not feel confident that [Lee] would represent [him] adequately" because Lee had spent little time meeting with him.  The magistrate judge responded that Lee was merely standby counsel and was not defending Ductan, because Ductan had "waived [his] right to having an appointed attorney"

5

at the previous hearing and was therefore "representing [him]self." J.A. 49. Ductan replied that he did not want Lee to remain in the case in any capacity, explaining that he was "seeking private counsel," J.A. 50, and "d[id] not want to contract with the government at all, as far as counsel's concerned," J.A. 57.

The magistrate judge denied Lee's motion to withdraw. The judge explained that while he understood the difficult position Lee was in, Lee would not have to try the case because Ductan "by his conduct . . . had waived his right to appointed counsel[, s]o his option is to hire a lawyer or represent himself." J.A. 53. Before concluding the hearing, the judge briefly explained to Ductan the risks of proceeding pro se, emphasizing that Ductan was on his own unless he either "hire[d] an attorney" or "allow[ed] Mr. Lee to help." J.A. 59.

## C.

Ductan thereafter appeared before the district court for calendar call. The court advised Ductan on the advantages of professional representation, noting that although Ductan had waived his right to appointed counsel, he was free to hire counsel. In response, Ductan said that he was a "secured party creditor" and was seeking private counsel. Supp. J.A. 41. Ductan also stressed that he "could not properly represent [him]self." Id.

6

Jury selection began the following day, with Ductan representing himself and Lee present as standby counsel. Ductan told the district court that the "defense is not prepared right now to move forward with any proceedings." J.A. 64. Ductan also repeatedly interrupted as the court attempted to call the venire, demanding to know whether he was "in a contract court or a criminal court," asserting that he was "the beneficiary of a trust," and making other nonsense statements. J.A. 65–66. When Ductan continued to speak after the court directed him to stop interrupting, he was held in contempt and removed from the courtroom.

The district court directed that Ductan be placed in a holding cell from which he could observe the proceedings remotely. The court told the potential jurors that Ductan was representing himself and had opted not to be present for jury selection. Although the court had Lee introduce himself, it did not address his role in the jury selection process. The court then continued with voir dire, during which the government moved to strike several jurors for cause and exercised peremptory strikes. Lee did not move to strike any jurors or otherwise participate, except to join the government and the court at a brief bench conference.

After the jury was empaneled, the district court brought Ductan back into the courtroom and told him that it "would love

7

to have [him] participate" in the trial and would purge the contempt citation if he was willing to obey the court's directives. J.A. 119. Ductan responded, "I do not want to represent myself. I would like to seek private counsel." J.A. 120. Ductan also confirmed that he did not want Lee to assume duties as trial counsel, at which point the district court concluded that it "appears . . . he's choosing self-representation then because we're ready to go." J.A. 121. However, when Lee asked Ductan if that was a fair representation of his choice, Ductan responded, "No, it is not," and stated that he "d[id] not want to be represented in this format." J.A. 122. The district court then began the trial, instructing Ductan that he was representing himself but could seek assistance from Lee if he wished.

## D.

Ductan's trial proceeded uneventfully. Ductan waived his opening statement but cross-examined several of the government's witnesses, recalled one witness during his case, and consulted occasionally with Lee. Ductan also gave a closing argument, emphasizing that there was reasonable doubt and arguing his good character to the jury (over the government's objections). The jury found Ductan guilty on all three counts in the indictment.

At Ductan's request, the court appointed an attorney to represent him at sentencing. The court imposed a within-

8

guidelines sentence of 24 months in prison for the two drug counts, in addition to a mandatory consecutive term of 60 months for his conviction under 18 U.S.C. § 924(c)(1), for a total sentence of 84 months.

## II.

On appeal, Ductan argues that he was denied his Sixth Amendment right to counsel on two occasions. First, he contends that the magistrate judge erred by finding that he forfeited his right to counsel by his conduct, and he also maintains that he did not effectively waive that right, either expressly or by implication. Second, he claims the district court further deprived him of his right to counsel by removing him from the courtroom during jury selection without appointing counsel, leaving him unrepresented during a critical stage of his trial. We agree with Ductan as to his first claim, which alone is sufficient to vacate the judgment and remand for a new trial.

### A.

#### 1.

We begin our analysis by determining the appropriate standard of review.

Ductan did not explicitly object to the magistrate judge's ruling that he had forfeited his right to counsel. Although Ductan repeated throughout the proceedings that he planned to

9

hire private counsel, did not want to represent himself, and did "not want to waive [his] Sixth Amendment right to private counsel," J.A. 123, we do not find that any of those comments, even liberally construed, constitute an objection to the magistrate judge's ruling. This is particularly so in light of Ductan's insistence that he did not want appointed counsel.

A defendant's failure to object in the district court to an alleged error would normally bar appellate review absent plain error. United States v. Powell, 680 F.3d 350, 358 (4th Cir. 2012). As we explain, however, the circumstances here warrant that we consider de novo the magistrate judge's forfeiture finding.

2.

The proper standard of review when a defendant fails to object to a right-to-counsel waiver[1] is a question that has divided our sister circuits. See United States v. Stanley, 739

---

[1] The magistrate judge found that Ductan had forfeited his right to counsel because of his misconduct. The parties, however, alternatively describe the question before us as one involving waiver of the right to counsel. The concepts are, of course, quite different. "A waiver is an intentional and voluntary relinquishment of a known right." United States v. Goldberg, 67 F.3d 1092, 1099 (3d Cir. 1995). In contrast, "forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." Id. at 1100. While we will take care to distinguish between forfeiture and waiver when considering the parties' contentions, we think the standard of review is the same in either case.

F.3d 633, 644–45 & n.2 (11th Cir. 2014) (collecting cases and explaining that "[a]pproaches to this question differ across, and even within, other circuits"); United States v. McBride, 362 F.3d 360, 365–66 (6th Cir. 2004) (observing an intra-circuit conflict but stating that other circuits "uniformly apply a de novo standard of review").

Our approach has varied. Most recently, we have acknowledged the uncertainty surrounding the issue but declined to determine the appropriate standard of review. See United States v. McAtee, 598 F. App'x 185, 186 n.* (4th Cir. 2015); United States v. Parker, 576 F. App'x 157, 162 (4th Cir. 2014). However, we have also applied de novo review without elaboration, see, e.g., United States v. Curry, 575 F. App'x 143, 145 (4th Cir. 2014); United States v. Hickson, 506 F. App'x 227, 233 (4th Cir. 2013), as well as plain error review in our lone published decision on the issue, United States v. Bernard, 708 F.3d 583, 588 (4th Cir. 2013).

Although the facts in Bernard are reminiscent of the circumstances of this case, they are not analogous. In Bernard, the defendant sought to discharge his counsel and proceed pro se despite having a history of mental illness and initially being found incompetent to stand trial. The district court held a hearing to consider defense counsel's motion to withdraw and the defendant's competency to waive counsel and represent himself.

11

At the time of the hearing, the defendant was represented by counsel, who was advocating for the defendant's ability to represent himself. 708 F.3d at 586 (quoting defense counsel's argument that "since th[e] standard has been met . . . you could find that he is competent to waive counsel"). Even after the court found the defendant competent and granted his counsel's motion to withdraw, counsel remained as standby and participated in a bench conference with the court and the government on the subject of the defendant's competency.

In assessing whether there was a Sixth Amendment violation, we stated that "we look to not only the defendant, but to his counsel, who for much of the hearing actively participated with full representational authority." Id. at 588 n.7. Because counsel bore "substantial responsibility for allowing the alleged error to pass without objection," we concluded that "his failure to preserve the claim of invalid waiver warrants plain error review." Id. (internal quotation mark omitted).

In Bernard, the court made "no decision on defense counsel's motion to withdraw" until "late in the hearing," after the court had already undertaken the competency evaluation. Id. In contrast, the magistrate judge here granted counsel's motion to withdraw early in the hearing, before later finding that Ductan forfeited his right to counsel. See J.A. 27–28. Thus,

12

at the point the judge found a forfeiture, Ductan was very much left "to his own devices." 708 F.3d at 588 n.7.

As the Ninth Circuit has explained, "we do not expect pro se defendants to know the perils of self-representation, and consequently, we cannot expect defendants to recognize that they have not been correctly and fully advised, let alone to point out the court's errors." United States v. Erskine, 355 F.3d 1161, 1166 (9th Cir. 2004). In Erskine, the defendant challenged the validity of his waiver of counsel after failing to object to the district court's Faretta inquiry below. In contrast to Bernard, the district court in Erskine had determined that the defendant validly waived counsel while he was completely unrepresented. As a result, the Ninth Circuit held that "plain error review would be inappropriate" and reviewed the validity of the waiver de novo. Id. at 1165–67.

We find the Ninth Circuit's reasoning persuasive, and conclude that its holding applies equally to cases in which a pro se defendant fails to object to a district court's finding of forfeiture. We therefore review de novo the magistrate judge's determination that Ductan forfeited his right to counsel.

3.

The Sixth Amendment guarantees to a criminal defendant the right to the assistance of counsel before he can be convicted

13

and punished by a term of imprisonment.  U.S. Const. amend. VI;

Gideon v. Wainwright, 372 U.S. 335, 339–40 (1963).  The right to

counsel is fundamental to our system of justice; beyond

protecting individual defendants, it is "critical to the ability

of the adversarial system to produce just results."  Strickland

v. Washington, 466 U.S. 668, 685 (1984).

Nonetheless, it is equally clear that the Sixth Amendment

also protects a defendant's affirmative right to self-

representation.  As the Court explained in Faretta v.

California, "[t]o thrust counsel upon the accused, against his

considered wish, thus violates the logic of the [Sixth]

Amendment. . . . Unless the accused has acquiesced in such

representation, the defense presented is not the defense

guaranteed him by the Constitution, for, in a very real sense,

it is not his defense."  422 U.S. 806, 820 (1975).

We have said that the right to self-representation is

inescapably in tension with the right to counsel.  This is so

because invocation of the former "poses a peculiar problem: it

requires that the defendant waive his right to counsel."  Fields

v. Murray, 49 F.3d 1024, 1028 (4th Cir. 1995) (en banc); see

also United States v. Bush, 404 F.3d 263, 270 (4th Cir. 2005)

("Th[e right to self-representation] . . . is mutually exclusive

of the right to counsel guaranteed by the Sixth Amendment.");

United States v. Singleton, 107 F.3d 1091, 1096 (4th Cir. 1997)

14

(explaining that the two rights are "essentially inverse aspects of the Sixth Amendment and thus . . . assertion of one constitutes a de facto waiver of the other"). Recognizing this tension, we have clarified that because access to counsel "affects [a defendant's] ability to assert any other rights he may have," Fields, 49 F.3d at 1028 (internal quotation mark omitted), "the right to counsel is preeminent and hence, the default position," Singleton, 107 F.3d at 1096.

Although other courts have held that the right to counsel may be relinquished either intentionally or unintentionally, see United States v. Leggett, 162 F.3d 237, 249–50 (3d Cir. 1998) (explaining that the right to counsel can be waived by a knowing and voluntary waiver or unintentionally forfeited as a result of "extremely serious misconduct"), we have never held that counsel can be relinquished by means short of waiver. Consistent with our view that representation by counsel is the "default position," we have instead instructed lower courts to "indulge in every reasonable presumption" against the relinquishment of the right to counsel. Fields, 49 F.3d at 1029 (quoting Brewer v. Williams, 430 U.S. 387, 404 (1977)). Accordingly, an effective assertion of the right to self-representation (and thus a waiver of the right to counsel) requires that a defendant "knowingly and intelligently" forgo the benefits of counsel

15

after being made aware of the dangers and disadvantages of self-representation.  <u>Faretta</u>, 422 U.S. at 835.

The Supreme Court has not established precise guidelines for determining whether a waiver is knowing and intelligent.  We have held that a "searching or formal inquiry," while required by some of our sister circuits,[2] is not necessary.  <u>Singleton</u>, 107 F.3d at 1097.  Still, before allowing a defendant to represent himself, a district court must find that the defendant's background, appreciation of the charges against him and their potential penalties, and understanding of the advantages and disadvantages of self-representation support the conclusion that his waiver of counsel is knowing and intelligent.  <u>Id.</u> at 1098–99.

In addition to requiring that a waiver be knowing and intelligent as a constitutional minimum, we have imposed one other requirement.  In <u>Fields</u>, we noted the "thin line between improperly allowing the defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation."  49 F.3d at 1029 (internal quotation mark omitted).  Acknowledging that "[a] skillful defendant could

---

[2] <u>See, e.g.</u>, <u>United States v. Jones</u>, 452 F.3d 223, 228 & n.2 (3d Cir. 2006) (requiring a "penetrating and comprehensive examination of all the circumstances" but acknowledging that such an inquiry "is not required in every court").

manipulate this dilemma to create reversible error," we held that a waiver of counsel through the election of self-representation must be more than knowing and intelligent: it must also be "clear[] and unequivocal[]." Id. We explained that this requirement "greatly aids the trial court in resolving this dilemma" by allowing the court to presume that "the defendant should proceed with counsel absent an unmistakable expression by the defendant that so to proceed is contrary to his wishes." Id. (emphasis added).[3]

Since our en banc decision in Fields, we have consistently held that as between counsel and self-representation, counsel is the "default position" unless and until a defendant explicitly asserts his desire to proceed pro se. See, e.g., Bernard, 708

---

[3] Other courts have come to the same conclusion. See, e.g., United States v. Jones, 778 F.3d 375, 389 (1st Cir. 2015) ("[T]he court must make certain that the defendant states his intent to relinquish his right to counsel in unequivocal language.") (internal quotation marks omitted); United States v. Campbell, 659 F.3d 607, 612 (7th Cir. 2011), vacated, remanded, and affirmed on other grounds, 488 F. App'x 152 (7th Cir. 2012) ("[T]he requirement that a waiver of counsel be unequivocal is necessary lest a defendant attempt to play one constitutional right against another.") (internal quotation marks omitted); United States v. Long, 597 F.3d 720, 725 (5th Cir. 2010) (finding no valid waiver where the defendant "made a request to fire his appointed attorney, but not a clear and unequivocal request to represent himself"); Jones, 452 F.3d at 231 (requiring a "clear and unequivocal" selection of self-representation in order to validly waive counsel). But see United States v. Oreye, 263 F.3d 669, 670–71 (7th Cir. 2001) (allowing waiver of the right to counsel by conduct in the absence of an express waiver).

17

F.3d at 588 ("[A] person may waive the right to counsel and proceed at trial pro se only if the waiver is (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely."); Bush, 404 F.3d at 271 (noting that invocation of the right to self-representation, and thus waiver of the right to counsel, must be clear and unequivocal); Singleton, 107 F.3d at 1096 ("[T]he right to counsel may be waived only expressly, knowingly, and intelligently . . . ."). And while some courts have found that a defendant can validly waive the right to counsel by conduct or implication, see, e.g., King v. Bobby, 433 F.3d 483, 492 (6th Cir. 2006), Fields and its progeny preclude such a result in our circuit, see United States v. Frazier-El, 204 F.3d 553, 558–59 (4th Cir. 2000) (explaining that because it necessitates a waiver of counsel, selection of self-representation must be clear and unequivocal "to protect against an inadvertent waiver of the right to counsel" and to create a presumption "[i]n ambiguous situations created by a defendant's vacillation or manipulation").

4.

It is against this backdrop that we turn to Ductan's first claim. Ductan argues that the right to counsel cannot be forfeited by misconduct, and also maintains that no waiver occurred because he did not "clearly and unequivocally" elect to proceed pro se and waive counsel as required under our case law.

18

Ductan also contends that even if he had expressed a desire to represent himself, his waiver was not knowing and intelligent because the magistrate judge did not complete the inquiry required by Faretta.

Ductan stresses that at no point in the initial hearing before the magistrate judge did he clearly and unequivocally elect to represent himself or waive his right to counsel. Indeed, throughout the proceedings, Ductan never wavered in his desire to retain counsel, while complaining that it was "almost impossible to do that being incarcerated." J.A. 28. When the magistrate judge asked Ductan if he wanted to represent himself, he responded "No." J.A. 28.[4] But Ductan also adamantly refused appointed counsel, repeatedly stating that he did "not want an attorney appointed to [him]," J.A. 30, and did "not want to contract with the government at all, as far as counsel's concerned," J.A. 57.

_____

[4] Ductan remained steadfast in his opposition to proceeding pro se. At a later docket call, Ductan stated that he was seeking private counsel and added that he "could not properly represent [him]self" and that "it would be impossible for me to prepare a case tomorrow." Supp. J.A. 41. On the first day of trial, Ductan continued to object to proceeding pro se, telling the district court that the "defense is not prepared right now to move forward with any proceedings." J.A. 64. After being returned to the courtroom following jury selection, he reiterated, "I do not want to represent myself. I would like to seek private counsel," J.A. 120, "I do not want to waive my Sixth Amendment right to private counsel," J.A. 123, and he responded "No" when asked if he was choosing self-representation, J.A. 122.

19

Based on this record, the magistrate judge correctly determined that Ductan had "<u>not</u> . . . knowingly and intentionally waived his right to counsel," citing <u>Frazier-El</u> for the proposition that an assertion of the right to self-representation must be "(1) clear and unequivocal; (2) knowing, intelligent and voluntary; and (3) timely." <u>Ductan</u>, No. 3:04-CR-252, ECF No. 142, at 2 (emphasis added). But the judge concluded nonetheless that Ductan had "forfeited his right to counsel in this matter" by his "frivolous arguments and answers to questions." <u>Id.</u> We hold that this was error.

While some circuits have held that a defendant can forfeit the right to counsel, <u>see, e.g.</u>, <u>United States v. McLeod</u>, 53 F.3d 322, 325–26 (11th Cir. 1995), we have never endorsed that notion. Moreover, at least four Justices of the Supreme Court have concluded that while "[s]ome rights may be forfeited by means short of waiver . . . others may not," and identified the right to counsel as one that can only be relinquished intentionally. <u>Freytag v. Comm'r of Internal Revenue</u>, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring) (citing <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)). And even those circuits holding that a defendant may forfeit his right to counsel have done so only in truly egregious circumstances. <u>See, e.g.</u>, <u>McLeod</u>, 53 F.3d at 325–26 (finding that defendant forfeited the right to counsel by threatening to harm his counsel, verbally

20

abusing him, and ordering him to engage in unethical conduct). This is not such a case.

To be sure, Ductan was uncooperative when discussing the issue of counsel with the court. By resisting both appointed counsel and self-representation, he essentially rejected all of his options, putting the magistrate judge in an undeniably difficult position. However, despite Ductan's obstructive behavior, he never engaged in the type of egregious conduct that other courts have concluded justifies a finding of forfeiture. See, e.g., United States v. Thompson, 335 F.3d 782, 785 (8th Cir. 2003) (death threat); Leggett, 162 F.3d at 250 (unprovoked physical assault).

Nor do the facts support a finding that Ductan waived his right to counsel. In Frazier-El, we considered a situation in which the defendant sought to fire his court-appointed attorney because the attorney refused to make a frivolous argument. Frazier-El also said that he would continue to request the removal of any attorney who so refused, and even stated that he would prefer to represent himself in order to make the argument. 204 F.3d at 557. The district court denied Frazier-El's request to fire his attorney and proceed pro se, and we affirmed.

Confirming that invocation of the right of self-representation must be "clear and unequivocal," we found that the district court acted appropriately by forcing the defendant

to continue with appointed counsel when he "vacillat[ed]" between a desire for counsel and a desire for self-representation. 204 F.3d at 559-60. Although Ductan's case is arguably stronger than Frazier-El's because Ductan never expressed any desire to proceed pro se, Frazier-El counsels that a court must insist on appointed counsel against a defendant's wishes in the absence of an unequivocal request to proceed pro se, or when the basis for the defendant's objection to counsel is frivolous.

The government contends that Ductan's waiver of counsel was constitutionally adequate, citing to our decision in United States v. Gallop, 838 F.2d 105 (4th Cir. 1988). In Gallop, the defendant sought to fire his court-appointed lawyer but also objected to proceeding pro se. When the district court found that there was no cause to replace the defendant's appointed lawyer, the defendant indicated that he had "no choice" but to fire his lawyer and represent himself. Id. at 107.

We found that the defendant validly waived counsel because "[a] refusal without good cause to proceed with able appointed counsel is a voluntary waiver." Id. at 109. The government seizes upon this holding to conclude that "a defendant's unjustified, dilatory tactics can result in an implied waiver even absent an express assertion of the right to self-representation." Appellee's Br. at 30.

22

Gallop, however, predated the "clear and unequivocal" requirement that the en banc court adopted in Fields. Thus, although we have continued to rely on Gallop for its approach to Faretta inquiries and the determination whether a waiver is "intelligent, knowing, and voluntary," it does not provide correct guidance on whether a waiver of counsel is clear and unequivocal.

In this case, there was no clear and unequivocal waiver of counsel or election of self-representation. Because neither Gallop nor the out-of-circuit cases cited by the government account for this post-Fields requirement, we do not find them controlling or persuasive here, except as they relate to the issue of whether Ductan's waiver was intelligent, knowing, and voluntary.[5]

In any event, even if Ductan had clearly and unequivocally elected self-representation, no valid waiver of counsel occurred because the magistrate judge did not complete the Faretta

---

[5] For the proposition that counsel can be waived by implication, the government also cites United States v. Davis, 958 F.2d 47, 49 (4th Cir. 1992). Like Gallop, Davis predates Fields, but is also readily distinguishable. In Davis, the defendant refused to allow the court to inquire into his financial status, preventing the court from determining whether he was even eligible for court-appointed counsel. Because the defendant bears the burden of proving that he lacks the means to retain counsel, id. at 48, Davis has no bearing on this case, in which there is no debate that Ductan is indigent and eligible for appointed counsel.

23

inquiry. Although the judge attempted to conduct such an inquiry, directing the government to summarize the charges and potential penalties for Ductan and asking whether Ductan was under the influence of drugs or alcohol, Ductan's nonsense responses prevented him from fully exploring Ductan's understanding of the proceedings and the dangers of proceeding pro se. Thus, as the magistrate judge acknowledged, Ductan did "not . . . knowingly and intentionally waive[] his right to counsel." Ductan, No. 3:04-CR-252, ECF No. 142, at 2. In these circumstances, our default rule required that counsel be appointed for Ductan until he either effected a proper waiver or retained a lawyer.

In sum, the magistrate judge erred in finding that Ductan forfeited his right to counsel, and we decline to find an effective waiver of that right on this record. Because the magistrate judge's error is not subject to harmless error review, see United States v. Gonzalez-Lopez, 548 U.S. 140, 148-50 (2006) (holding that denial of counsel is a "structural error . . . bear[ing] directly on the framework within which the trial proceeds"), we vacate Ductan's conviction and remand for a new trial.

VACATED AND REMANDED

24

DIAZ, Circuit Judge, concurring:

The court correctly grants Ductan a new trial based on his first claim of error. I write separately to explain why, in my view, what occurred during jury selection provides an independent ground for that relief. Ductan asserts that the district court erred by removing him from the courtroom for his disruptive behavior while he was proceeding pro se and selecting a jury in his absence. He argues that by not appointing counsel in his absence, the court left him unrepresented during a critical stage of his trial. I believe he is correct.

I.

Because Ductan failed to make a specific objection to the district court's action, I review his claim for plain error.[1] See United States v. Ramirez-Castillo, 748 F.3d 205, 215 n.7 (4th Cir. 2014) (holding that forfeited errors are subject to plain error review in this circuit, even when those errors are

---

[1] Ductan says that he lodged a proper objection when, while being removed from the courtroom, he shouted, "Does anybody have any claims against me? I object to this whole proceeding." J.A. 67. We, however, have consistently held that general objections are insufficient to preserve claims for appeal. See, e.g., United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Because Ductan's statement that he "object[ed] to this whole proceeding" was typical of his consistent viewpoint that the court had no jurisdiction over him, it did not "reasonably . . . alert the district court of the true ground for the objection," id., and thus was not sufficiently specific to preserve his claim.

25

structural).  Thus, to warrant relief, Ductan must demonstrate that there was error, the error was plain, and it affected his substantial rights.  United States v. Slade, 631 F.3d 185, 190 (4th Cir. 2011).  An error is plain when it is "clear or obvious," meaning that "the settled law of the Supreme Court or this [Court] establishes that an error has occurred," or in rare cases, when authority from other circuits is unanimous.  United States v. Carthorne, 726 F.3d 503, 516 & n.14 (4th Cir. 2013).  Even then, we will only notice the error if it affects the "fairness, integrity, or public reputation of judicial proceedings."  Slade, 631 F.3d at 192 (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).  I conclude that Ductan has met his burden.

II.

I begin by emphasizing that the district court acted appropriately by removing Ductan from the courtroom.  Although the Supreme Court has held that removal of a defendant from his own trial is "not pleasant" and even "[d]eplorable," Illinois v. Allen, 397 U.S. 337, 346–47 (1970), Ductan was disruptive, refused to obey the court's instructions, and repeatedly interrupted the court as it attempted to begin jury selection.  Under those circumstances, the court had discretion to address Ductan's "disruptive, contumacious, [and] stubbornly defiant"

26

conduct by removing him from the courtroom.  Id. at 343.  Ductan does not contend otherwise, but he does say that the district court's failure to appoint counsel in his absence constitutes plain error.  I agree.

It is well established that jury selection is a "critical stage" of a criminal trial to which the right to counsel attaches.  Gomez v. United States, 490 U.S. 858, 873 (1989).  Thus, the absence of counsel during jury selection constitutes a "breakdown in the adversarial process," James v. Harrison, 389 F.3d 450, 456 (4th Cir. 2004), and we have made clear that "[t]he presumption that counsel's presence is essential requires us to conclude that a trial is unfair if the accused is denied counsel" at jury selection, United States v. Hanno, 21 F.3d 42, 47 (4th Cir. 1994) (quoting United States v. Cronic, 466 U.S. 648, 659 (1984)).  This fundamental principle applies with equal force when a defendant represents himself.  Cf. Mayberry v. Pennsylvania, 400 U.S. 455, 468 (1971) (Burger, C.J., concurring) (explaining that "the presence and participation of counsel, even when opposed by the accused," protects a defendant's Sixth Amendment rights "when the accused has refused legal assistance and then [brings] about his own removal from the proceedings").

Of course, the right to self-representation is "not absolute."  Fields, 49 F.3d at 1035.  Thus, a pro se defendant

27

who is disruptive in the courtroom may forfeit his right to self-representation. Faretta, 422 U.S. at 834 n.46 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."). In these cases, the proper course of action is to revoke the defendant's right to self-representation and appoint counsel. See, e.g., United States v. Mack, 362 F.3d 597, 601 (9th Cir. 2004) ("A defendant does not forfeit his right to representation at trial when he acts out. He merely forfeits his right to represent himself in the proceeding."); United States v. Pina, 844 F.2d 1, 15 (1st Cir. 1988) (suggesting that a trial judge "employ his or her wisdom to appoint standby counsel" to represent a defendant who is removed or discharges counsel); see also United States v. West, 877 F.2d 281, 287 (4th Cir. 1989) (affirming the defendant's conviction where the district court found him incompetent to represent himself and immediately appointed his standby counsel to replace him).[2]

---

[2] The parties cite to two post-conviction cases that affirmed convictions after a pro se defendant was removed from the courtroom and not replaced by appointed counsel, but both explicitly did so because of the highly deferential standard of review in 28 U.S.C. § 2254 habeas cases. See Thomas v. Carroll, 581 F.3d 118, 127 (3d Cir. 2009) ("If this appeal had come before us on a direct appeal from a federal court presented with a defendant who waived his right to counsel and then absented himself from the courtroom, we might hold differently."); Davis (Continued)

When the district court held Ductan in contempt and removed him from the courtroom, Ductan was representing himself. He was placed in a holding cell from which he could see and hear the proceedings, but could not participate in any way. Moreover, nothing in the record supports the government's assertion that standby counsel Lee was thereafter "representing [Ductan]." Appellee's Br. at 43. Although Lee was in the courtroom and present for a brief bench conference, he did not move to strike any jurors, object to any of the government's strikes, or otherwise participate in jury selection. Nor did the district court appoint Lee as counsel, or otherwise indicate that Lee was in any way authorized to act on Ductan's behalf. See United States v. Taylor, 933 F.2d 307, 312 (5th Cir. 1991) (explaining the "limited role" of standby counsel and clarifying that "standby counsel is not counsel at all, at least not as that term is used in the Sixth Amendment").

---

v. Grant, 532 F.3d 132, 144 (2d Cir. 2008) ("[I]f we were reviewing the issue on a blank slate, we might be inclined to conclude that . . . the Sixth Amendment requires that a defendant who is involuntarily removed from the courtroom must be provided with replacement counsel during his absence.").

The government argues that our decision in James v. Harrison, 389 F.3d 450 (4th Cir. 2004) reaches a similar conclusion, but I find the deprivation in James—in which the defendant was represented by co-defendant's counsel instead of his own during voir dire and jury selection—significantly less severe and thus distinguishable from what happened here.

Because Ductan was entirely unrepresented during jury selection, conducting this critical stage of his trial in his absence and without appointed counsel was plain error. The principle enunciated by the Supreme Court in Gomez and followed by this court in Hanno and James makes it "clear" and "obvious" that complete denial of counsel during jury selection is a constitutional violation, and no Supreme Court or Fourth Circuit case suggests that this general rule does not apply to defendants proceeding pro se. To the contrary, the weight of the cases makes it plain that when a pro se defendant is involuntarily removed from the courtroom, no "critical stage" of the trial may be conducted in his absence without the appointment of counsel.

I also conclude that the other prongs of the Olano test are satisfied. The absence of counsel during jury selection constitutes a "breakdown in the adversarial process" that necessarily affects a defendant's substantial rights. James, 389 F.3d at 456. Moreover, because errors that result in a "breakdown of the adversarial process" are precisely the types of deprivations that affect the fairness and integrity of judicial proceedings, the error provides an independent ground for vacating Ductan's conviction and remanding for a new trial.

III.

I do not take lightly the predicament that district courts face when confronted by a contumacious criminal defendant. But in these admittedly challenging situations, a court may not, as the first choice, find forfeiture or waiver of the right to counsel on the basis of a defendant's dilatory conduct or otherwise by implication or process of elimination. Instead, as the court reasserts today, "[i]n ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a constitutional primacy to the right to counsel because this right serves both the individual and the collective good, as opposed to only the individual interests served by protecting the right of self-representation." Frazier-El, 204 F.3d at 559 (internal quotation mark omitted).

Of course, when a defendant does assert his right to self-representation, that right "is not a license to abuse the dignity of the courtroom." Faretta, 422 U.S. at 834 n.46. When a pro se defendant acts out or engages in serious misconduct such that his choice to represent himself cannot be reconciled with the need to maintain the efficiency and order of the proceedings, the district court enjoys ample discretion to terminate that self-representation and appoint counsel. But in no case may a critical stage of a defendant's trial take place after he is removed, in the absence of any representation.

31

I therefore join the court's decision to vacate Ductan's conviction and remand for a new trial.