**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 21-4601**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOE LINDSEY TAYLOR, III, a/k/a Yosef Hakiem Bey,

Defendant - Appellant.

———————————

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Max O. Cogburn, Jr., District Judge.  (1:20-cr-00076-MOC-WCM-1)

———————————

Submitted:  January 4, 2024                       Decided:  March 11, 2024

———————————

Before GREGORY, THACKER, and RICHARDSON, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ON BRIEF:**  John G. Baker, Federal Public Defender, Ann L. Hester, Assistant Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, Amy E. Ray, Assistant United States Attorney, Charlotte, North Carolina, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Joe Lindsey Taylor, III ("Appellant"), also known as Yosef Hakiem Bey, appeals his criminal conviction for possession of a firearm as a felon. He contends that his Sixth Amendment rights were violated when the district court allowed him to proceed at trial pro se. Specifically, he contends the district court erred when it determined that his waiver of counsel was knowing and voluntary.

We hold that Appellant's waiver was knowing and voluntary, and we affirm the district court.

## I.

Appellant was arrested in June 2020 when officers executing a warrant on a separate matter found him with a firearm. He had previously been convicted of state drug-trafficking offenses for which he was sentenced to 8 to 19 months of imprisonment and a state robbery offense for which he was sentenced to 29 to 44 months of imprisonment. In August 2020, a grand jury indicted Appellant on a single count of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1).

At his initial appearance, Appellant stated he wished to represent himself. A federal public defender was present during the initial appearance, but she remained in the gallery, informing the magistrate judge that Appellant did not wish her to represent him. The magistrate judge advised Appellant of his right to an attorney and impressed upon him the charge he faced as well as the maximum penalties for that charge. Appellant stated he understood the charges against him, understood his right to an attorney, and understood that several rules with which he was not familiar would govern the proceedings, including

2

the Federal Rules of Evidence and the Federal Rules of Criminal Procedure.  J.A. 21[1] ("You're not familiar with the rules that would be in effect here, that is, the court procedures, Federal Rules of Evidence, or the Federal Rules of Criminal Procedure.").  The court further admonished Appellant that it would be unwise to represent himself and that a trained lawyer could represent Appellant far better than he could represent himself. Specifically, the court "strongly urge[d] [Appellant] not to try to represent [him]self in this case." *Id.*

Nonetheless, Appellant insisted he represent himself. The magistrate judge inquired if that decision was "entirely voluntary," and Appellant relied, "Yes."  J.A. 22.  The Government and the public defender who was present for the hearing each testified that they had no reason to doubt that Appellant was knowingly and voluntarily waiving his right to counsel.  The court finally determined that, notwithstanding its admonition, Appellant had knowingly and voluntarily waived his right to counsel.  The court then appointed the federal public defender as standby counsel.  Appellant objected to that decision.

Thereafter, at Appellant's arraignment, the magistrate judge again discussed Appellant's right to counsel with him.  The magistrate judge asked a litany of questions designed to ensure that Appellant's waiver was made knowingly and voluntarily.  These questions included whether Appellant understood that he had a right to counsel at every stage of proceedings, including appointed counsel if he could not afford to hire an attorney; that Appellant understood the nature of the charge against him, including the specific

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

penalties he faced for that charge; and that Appellant was aware that the Sentencing Guidelines, Federal Rules of Evidence, and Federal Rules of Criminal Procedure would govern the proceedings. The magistrate judge reminded Appellant, "[I]n representing yourself, you must abide by those very technical rules and . . . they will not be relaxed for your benefit." J.A. 33. Last, the magistrate judge once again admonished Appellant that he was not familiar with the applicable law or procedures and that a trained lawyer would represent him far better than he would represent himself. At this juncture, Appellant stated that he would accept the public defender as his counsel. The arraignment went forward with the assistance of counsel. Appellant pled not guilty and requested a jury trial.

But before trial, Appellant's counsel filed a motion to withdraw. The magistrate judge held a hearing on the motion. At the hearing, the public defender informed the court that Appellant had decided to proceed pro se and had asked her to withdraw. Appellant affirmed that he wanted to represent himself because he felt like he could "handle [his] own situation," because he had obtained representation "on the outside,"[2] and because he felt "like he [could] handle [his] situation better than [the public defender]." J.A. 558. He argued that he had "a right to represent [him]self," and he felt "confident in doing that pro se." *Id.* He further testified that he had discussed his decision with counsel. And the public defender stated, "I think that he has an understanding of the potential pitfalls of

---

[2] Appellant was relying on materials from an organization sometimes referred to as the Moorish Nation. Some members of this group argue that they are not subject to the jurisdiction of the United States. *Moorish Sovereign Citizens*, Southern Poverty Law Center (last visited December 11, 2023), https://perma.cc/UQZ5-SEZH.

representing himself so I'm not sure that further discussions will assist him in making this decision." *Id.* at 560.  She likewise stated, in response to the judge's question whether she "ha[d] any concerns about his competency," "No, Your Honor, not mental competency." *Id.* at 561.[3]

Even after this exchange, the magistrate judge called a recess to give Appellant and the public defender an opportunity to confer.  Appellant spoke to his counsel during the recess but remained adamant that he wanted to represent himself.  After this conferral, the public defender emphasized to the court, "He -- not only does he not request my advice, I think that he is taking a position that he actively will not cooperate with me to give it and so I -- again, at this point I think that he is fairly firm in his decision that he does want to represent himself." J.A. 564.  After the public defender's statement, the court once more asked Appellant a series of questions to ensure he willingly chose to represent himself.  Appellant responded, "Yeah, I'm doing it voluntarily." *Id.* at 565.

The court then gave Appellant the following admonishment:

> THE COURT: I must advise you, sir, that in my opinion a trained lawyer would defend you far better than you can defend yourself.  I think it is unwise of you to try to represent yourself in this case.  It does not appear to me that you are familiar with the law or that you are familiar with court procedures or that you are familiar with the rules of evidence.  Therefore, I strongly urge you not to try to represent yourself and instead allow yourself to be represented by an attorney.
> Do you understand the Court's recommendation in this regard?
> [APPELLANT]: Yeah, I understand.

---

[3] This  discussion took place outside of the prosecutor's hearing because this portion of the hearing was sealed.

5

> THE COURT: In light of the Court's recommendation, do you still wish to represent yourself in this case?
>
> [APPELLANT]: Yes, I strongly do.
>
> THE COURT: You're telling the Court that you understand fully the penalties that you might suffer if you're found guilty as well as the difficulties with representing yourself and that you still desire to represent yourself and to give up your right to be represented by a lawyer?
>
> [APPELLANT]: Yes.
>
> THE COURT: Is your decision to represent yourself entirely voluntary?
>
> [APPELLANT]: Yes.
>
> THE COURT: Has anyone forced you, threatened you, or applied any pressure whatsoever in this regard?
>
> [APPELLANT]: No.
>
> THE COURT: Is your decision to represent yourself made by you and you alone freely and willingly in all respects?
>
> [APPELLANT]: Yes.
>
> THE COURT: Is this really what you would like to do?
>
> [APPELLANT]: Yes.

J.A. 569–70. The magistrate judge asked the prosecutor if the prosecutor had any concerns about Appellant's waiver of counsel. The prosecutor expressed concern that some of Appellant's answers made it difficult to determine Appellant's level of familiarity with legal proceedings.

Nevertheless, the magistrate judge concluded that Appellant's waiver of his right to counsel was knowing and voluntary. Having had the opportunity to observe Appellant, the magistrate judge concluded in a written order that Appellant "underst[ood] the proceedings and [wa]s choosing to represent himself, notwithstanding the potential dangers of doing so and notwithstanding the Court's recommendation that he not attempt this course of action." J.A. 82.

6

A grand jury returned a superseding indictment against Appellant in December 2020 for a single charge of possessing a firearm as a convicted felon. The district court arraigned Appellant, and he pled not guilty and requested a jury trial.

After several continuances, Appellant's trial commenced in June 2021. At the beginning of trial, Appellant made several jurisdictional arguments tied to his Moorish Nation defense and indicated that he did not consent to moving forward. The court removed Appellant from the courtroom during voir dire because Appellant was being disruptive, but he was allowed to watch proceedings from his holding cell. He returned to the courtroom for the Government's opening statement and remained throughout the rest of the trial.

In its case in chief, the Government presented testimony from the arresting officers who found Appellant with the firearm on his person. The Government also called a North Carolina probation officer who testified about Appellant's prior convictions. Appellant cross-examined the Government's witnesses.

Appellant then offered his own testimony and the testimony of his girlfriend. Appellant's primary defense was that his identity had changed from Joe Lindsey Taylor to Yosef Hakiem Bey, so he was not the same person charged with the conduct at issue in the case. Appellant also introduced documents purporting to support this defense, and he accepted the assistance of standby counsel for the limited purpose of introducing those documents. Appellant admitted on cross-examination and in closing argument that he possessed the firearm police found on his person in June 2020, but he argued the law did

7

not apply to him because he was a member of the Moorish Nation, and the Second Amendment gave him a right to keep and bear arms.

The jury found Appellant guilty. At sentencing, the district court determined that the United States Sentencing Guidelines ("Guidelines") advised a sentence of between 77 and 96 months. Ultimately, Appellant accepted "full responsibility" for his conduct, J.A. 526, but claimed he was "under the influence that [he] had lawfully proclaimed [a new] nationality" and "was told and encouraged to carry a firearm." J.A. 526–27. The court sentenced Appellant to a below Guidelines sentence of 65 months of imprisonment because Appellant had children and the court worried about the consequences of depriving them of a father figure for longer than necessary.

Appellant noted a timely appeal.

II.

The parties dispute the standard of review. The Government argues that the standard of review is plain error when a defendant seeks to represent himself and is represented by counsel "advocating for the defendant's ability to represent himself." *See* Response Br. at 29 (citing *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015); *United States v. Bernard*, 708 F.3d 583, 588 (4th Cir. 2013)). Appellant counters that this case is not the typical self-representation case, and de novo review is proper, because the Government objected to the magistrate judge's waiver determination below, so the error was "preserved." Response Br. at 16 (citing Fed. R. Crim. Pro. 52(b); *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020); *United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006)). The Government responds that (1) it did not object to the waiver

8

determination, and (2) regardless, Appellant did not object to the waiver determination as he was required to do in order to avoid plain error review.

We agree with the Government. During the hearing regarding Appellant's motion to discharge his counsel and proceed pro se, the magistrate judge discussed with Appellant his desire to waive his right to counsel. The prosecutor was present during that discussion, and the magistrate judge asked the prosecutor if he had any concerns about Appellant's desire to waive his right to counsel. The prosecutor stated concerns regarding Appellant's decisions to "plead[] the Fifth" in response to basic questions about his familiarity with legal proceedings. Opening Br. at 7. This, the prosecutor argued, left the court unable to determine what Appellant knew and did not know about the legal process. Nevertheless, the magistrate judge issued an order allowing Appellant to represent himself. That finding was based both on the public colloquy to which the government was privy and also upon a status of counsel hearing that was closed to the prosecutor. The Government did not object to the court's order.

The Government is correct that the Government's voicing concerns regarding Appellant's colloquy with the magistrate judge is not the same as *objecting* to the court's determination that Appellant knowingly and voluntarily waived his right to counsel. It would have been clear to everyone in the room that it was not advisable for Appellant to represent himself, but that is a different matter from whether he was able to knowingly and voluntarily do so.

The Government is correct that the standard of review is plain error when a represented defendant, whose counsel is advocating for their client's right to self

9

representation, is allowed to proceed pro se. In *Bernard*, the defendant sought to fire his counsel and proceed pro se. 708 F.3d at 586. The district court in *Bernard* debated whether to grant the defendant's request because the defendant had a history of mental illness and had previously been held incompetent to stand trial. *Id.* Defense counsel advocated for the defendant to represent himself, and the court ultimately allowed the defendant to proceed pro se, but with standby counsel. *Id.* Under these circumstances, we held that the defendant had not preserved an objection to the district court's finding that he had validly waived his right to counsel, and plain error review applied. *See id.* at 588 ("Because Appellant presents these arguments for the first time on appeal, we review for plain error."); *see also Ductan*, 800 F.3d at 648 ("Because counsel bore substantial responsibility for allowing the alleged error to pass without objection, we concluded that his failure to preserve the claim of invalid waiver warrants plain error review.") (cleaned up).

This case is controlled by *Bernard* and *Ductan*. Appellant insisted on representing himself, and his public defender unequivocally supported his right to do so in multiple hearings. The public defender was also appointed as standby counsel to assist Appellant -- a decision Appellant actually *objected* to. The Government expressed some concerns about Appellant's self representation, but when the court issued a written order, based in part upon a sealed portion of the hearing during which the prosecutor was absent, the Government made no objection.

Therefore, we review for plain error.

10

III.

The question on appeal is whether Appellant knowingly and voluntarily waived his Sixth Amendment right to counsel.  Appellant argues he did not because he (1) did not understand the value of an attorney's assistance; (2) lacked an educational background and experience with legal proceedings; and (3) had no understanding of the judicial process at trial.  The Government points out that the magistrate judge questioned Appellant at length three times about his awareness of the value of counsel and the intricacies of the legal process; that Appellant stated he understood the charge against him and its penalties and understood that the rules of evidence, with which he was unfamiliar, would govern proceedings; and that the magistrate judge strongly advised Appellant against self representation.

The Sixth Amendment guarantees a criminal defendant's right to assistance of counsel before conviction and imprisonment, but it also guarantees the defendant's affirmative right to self representation.  *United States v. Ziegler*, 1 F.4th 219, 226 (4th Cir. 2021) (citing *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015)).  A defendant may waive the right to counsel and proceed pro se at trial only if the waiver is (1) clear and unequivocal; (2) knowing, intelligent, and voluntary; and (3) timely.  *Id.* (citing *United States v. Bernard*, 708 F.3d 583, 588 (4th Cir. 2013)).  Here, Appellant disputes only that his waiver was knowing, intelligent, and voluntary.

This court has declined the "invitation to define a precise procedure or litany for [the] evaluation" of whether such waiver was knowing and voluntary and instead has instructed district courts "to determine the sufficiency of the waiver from the record as a

11

whole." *United States v. Singleton*, 107 F.3d 1091, 1098–99 (4th Cir. 1997). We "review the sufficiency of a waiver of the right to counsel by evaluating the complete profile of the defendant and the circumstances of his decision as known to the trial court at the time, by examining the record as a whole." *United States v. Bush*, 404 F.3d 263, 270 (4th Cir. 2005). We have affirmed a district court's determination that a defendant was competent to represent himself when the defendant "knew the charges against him, understood the process, knew his rights, had some experience in the law, was warned that proceeding pro se was a bad idea, and understood the consequences of waiving his right to counsel and proceeding on his own." *Ziegler*, 1 F.4th at 229; *see also Ductan*, 800 F.3d at 649 (holding the "district court must find that the defendant's background, appreciation of the charges against him and their potential penalties, and understanding of the advantages and disadvantages of self-representation support the conclusion that his waiver of counsel is knowing and intelligent").

The record here reflects that the magistrate judge had ample basis to determine Appellant knowingly and intelligently waived his right to counsel and decided to represent himself. The magistrate judge questioned Appellant in three separate hearings to confirm Appellant wished to waive his right to counsel. Appellant repeatedly insisted, in his initial appearance and in the hearing on his public defender's motion to withdraw, that he wished to represent himself. The magistrate judge repeatedly impressed upon him the dangers of this decision, flatly told him the decision was unadvisable, and even forced standby counsel upon him over his own objection. The court also emphasized more than once that Appellant did not understand the rules that would govern the trial, such as the Federal Rules

12

of Evidence, Federal Rules of Criminal Procedure, and the Sentencing Guidelines. The magistrate judge explained the crime of which Appellant was accused as well as the maximum penalties to which he was exposed. The magistrate judge did everything possible to ensure this decision was knowing and voluntary, short of forcing Appellant to accept counsel. That was more than enough. *See Bernard*, 708 F.3d at 591 (holding waiver was knowing and voluntary when the court advised the defendant that he would be far better defended by a trained lawyer and advised the defendant of the difficulties and the penalties).

Appellant's argument that he had no understanding of the value of the assistance of counsel is without merit. The magistrate judge expressly impressed upon Appellant the value of counsel and repeatedly stated that Appellant would be better off being represented by counsel than he would be pro se. J.A. 21 ("[A] trained lawyer would defend you far better than you could defend yourself. I think it is unwise of you to try and represent yourself in this case. You're not familiar with the rules that would be in effect here, . . . and I would strongly urge you not to try to represent yourself."); *id.* at 34 (same); *id.* at 569 (same). Further, as the Government notes, Appellant had previously been convicted of crimes, and so he had some familiarity with the court system.

Appellant also argues that the magistrate judge lacked an opportunity to evaluate his intelligence and failed to inquire into his educational background. This argument also cannot succeed. The magistrate judge had numerous discussions with Appellant, which were sufficient to assure the magistrate judge that Appellant did not understand the Rules of Evidence or the Rules of Criminal Procedure. And in fact, the magistrate judge

13

specifically asked if Appellant had any "formal legal education." J.A. 31. Appellant responded, "No, sir." J.A. 31. This inquiry satisfies what is required of judges in such situations, where even someone who is mentally ill may be determined by a district court competent to waive the right to counsel. *See Bernard*, 708 F.3d at 590 ("It is therefore permissible for a trial court, having found a mentally ill defendant competent to stand trial, to determine him to be competent to waive his Sixth Amendment right to counsel."); *id.* at 591 ("[T]he district court was in the best position to observe [a defendant's] demeanor and make judgments about his mental abilities.").

Finally, Appellant's argument that he did not understand the judicial process does not equate to error on the part of the magistrate judge. The magistrate judge made clear to Appellant several times that rules would govern the proceedings of which Appellant had no knowledge and that accepting representation would give him the benefit of counsel that understood the rules. Appellant's conduct during the trial, setting aside his interruptions during voir dire, further indicates that he was at least able to follow the proceedings with admonitions from the district court. *See Bernard*, 708 F.3d at 591–92 ("The district court's satisfaction as to Appellant's competence to waive counsel and represent himself was justified throughout the trial because Appellant was able to make opening and closing statements, testify, and have his case reopened to conduct an examination . . . .").

Thus, none of Appellant's arguments undermine the district court's determination of a knowing, intelligent, and voluntary waiver.

14

IV.

In sum, we conclude that the district court did not plainly err in determining that Appellant knowingly, intelligently, and voluntarily waived his right to counsel.

*AFFIRMED*