[Cite as *State v. Lee*, 2020-Ohio-3987.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28125 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-785/1 |
| | : | |
| CHUCKIE M. LEE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of August, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
 Attorney for Plaintiff-Appellee

STEPHEN P. HARDWICK, Atty. Reg. No. 0062932, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
 Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}   Chuckie M. Lee appeals from his September 10, 2018 conviction, following a jury trial, of the following offenses: Counts 1 and 3 - murder (proximate result) in violation of R.C. 2903.02(B), unclassified felonies; Count 2 - felonious assault (serious harm), in violation of R.C. 2903.11(A)(1), a felony of the second degree; Counts 4-8 - felonious assault (deadly weapon), in violation of R.C 2903.11(A)(2), felonies of the second degree; and Count 9 - discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3)(C)(4), a felony of the first degree.   A three-year firearm specification accompanied each of these counts.   Lee was further found guilty by the court of: Count 10 - having weapons while under disability (prior drug conviction), in violation of R.C. 2923.13(A)(3), a felony of the third degree; and Count 11 - having weapons while under disability (prior offense of violence), in violation of R.C. 2923.13(A)(2), a felony of the third degree.

{¶ 2} At sentencing, the court merged Counts 2 through 4 into Count 1, and the State elected to proceed to sentencing on Count 1; the court merged Count 11 into Count 10, and the State elected to proceed on Count 10.   The court sentenced Lee to 15 years to life on Count 1; five years each on Counts 5, 7, 8, and 9; eight years on Count 6; and three years on Count 10.   The court ordered Count 10 to be served concurrently to all other counts, and Counts 1, 5, 6, 7, 8, and 9 to be served consecutively to each other. The court ordered that additional terms of three years on each of the firearm specifications be served consecutively and prior to the definite term of imprisonment, for an aggregate sentence of 61 years to life.

{¶ 3} The record before us demonstrates structural error in the trial court's determination that Lee's waiver of his right to counsel was valid.   Lee asserted his right

to self-representation but further argued that he was unprepared to proceed to trial in a few days due to his inability to obtain discovery. Lee conditioned his waiver upon a continuance. Since Lee's waiver was equivocal and unclear, the judgment of the trial court is reversed, and the matter is remanded for proceedings consistent with this opinion.

{¶ 4} Lee was indicted on April 7, 2017, and his retained attorney, Michael Pentecost, entered a notice of appearance the same day. Lee entered a plea of not guilty the following day, and he executed a time waiver on April 16, 2017.

{¶ 5} On August 28, 2017, Lee filed a motion to sever proceedings from his co-defendant, Kara Parisi-King. Lee supplemented the motion to sever on October 13, 2017.

{¶ 6} On December 6, 2017, a different attorney, Bradley Baldwin, was appointed to represent Lee, because he could not afford retained counsel. On February 19, 2018, Lee's appointed counsel filed motions for a plea of not guilty by reason of insanity (NGRI) and for a psychiatric exam. A hearing was held on the NGRI plea on February 21, 2018. At the hearing, during direct examination of Lee by defense counsel, Lee testified that he and his current defense counsel had discussed the NGRI plea and Lee's mental state from the time counsel was appointed to the case, and that they had discussed discovery over the past several months, including hours of video and discovery that had been produced very recently. On cross-examination by the prosecutor, Lee testified that his prior attorney had not done anything Lee had asked "in ten whole months," and had not provided him with discovery as his new attorney had done.

{¶ 7} At the conclusion of the hearing, the court overruled Lee's motion for leave to file a plea of not guilty by reason of insanity, and it issued a written decision on February

26, 2018.   Defense counsel filed a motion to withdraw on February 23, 2018, asserting that the attorney-client relationship had "become an adversarial one"; the court granted the motion on February 26, 2018.   Trial was rescheduled for June 18, 2018.

{¶ 8} On May 8, 2018, a second attorney was appointed for Lee, Anthony VanNoy, replacing Baldwin; VanNoy filed a motion for a continuance of the June 18, 2018 trial date, citing a scheduling conflict.   The State opposed the motion, noting that Lee had "had three attorneys appointed to represent him in the last year causing a delay each time."

{¶ 9} On May 14, 2018, counsel for Lee filed a notice of filing a plea of NGRI and requesting a sanity evaluation.   The State opposed the motion, noting that Lee already had a pending motion to continue the trial date and that, if the court granted the motion for an NGRI evaluation, a further continuation of the trial court would be needed. The State stated that it "was under the impression that there would be no more continuances in this case as it has been on this Court's docket for over a year."   The court granted the motion for a continuance and rescheduled the trial for August 13, 2018.   The court also ordered a sanity evaluation for Lee.   (The report from any evaluation is not in our record, if in fact one was done.)

{¶ 10} On July 19, 2018, counsel for Lee filed a motion for disclosure of grand jury transcripts; the State opposed the motion.   On August 2, 2018, the court overruled the motion.   On the same day, Lee filed pro se motions for the grand jury transcripts, to preserve evidence, for an expert witness, and for an evidentiary hearing.

{¶ 11} On Thursday, August 9, 2018, Lee's defense counsel, VanNoy., and his co-counsel, Kimberly Melchor, each filed motions to withdraw.   The following day, Lee filed

a pro se document entitled "Affidavit of facts Rescinding, Revoking and cancelling Attorney Anthony VanNoy." The trial court conducted a hearing on the motions to withdraw on August 9, 2018. VanNoy told the court that Lee had advised him that he wanted to represent himself, which prompted him and his co-counsel to file their motions to withdraw.

{¶ 12} At the hearing, the court advised Lee of numerous factors relevant to the waiver of a right to counsel: 1) that a criminal defendant has a right to assistance of counsel for his defense; 2) that a defendant has the independent constitutional right of self-representation; 3) that a defendant may proceed to defend himself without the benefit of counsel when he voluntarily, knowingly, and intelligently elects to do so; 4) that courts "are to indulge every reasonable presumption against the waiver of a fundamental constitutional right," including the right to counsel; 5) that the waiver must affirmatively appear in the record; 6) that the State bears the burden of overcoming presumptions against a valid waiver; 7) that, pursuant to Crim.R. 44(C), a defendant's waiver of counsel must be made in open court and recorded as provided in Crim.R. 22; 8) that a valid waiver of counsel "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter"; 9) that the court must make a sufficient inquiry to determine "whether the defendant fully understands and relinquished the right to counsel"; 10) that the court had an affirmative duty to engage in a dialogue with the defendant to "inform him of the nature of the charges, any included offenses, the range of possible punishments, any possible defenses, and any other facts which are

essential for a total understanding of this situation"; and 11) that Lee must "be made aware of the dangers and disadvantages of self representation."

{¶ 13} Lee acknowledged his understanding of his right to counsel, as well as the court's advisement that, if he qualified, the State would appoint and pay for a lawyer to advise him in the court proceedings. The court advised Lee that "a lawyer has the experience and knowledge of the entire trial process" and could call witnesses for him, question witnesses against him, and present evidence on his behalf. The court advised Lee that, in a jury trial, a lawyer would question potential jurors, object to questions that were improper, would have the experience to know which jurors would be in his best interest, and could advise him of the harm and consequences of what he said in court and what he had a right not to say.

{¶ 14} Lee acknowledged his understanding of the court's advisement that a lawyer knows rules of evidence and what evidence can or cannot come in at trial and knows how to conduct a voir dire examination and the grounds for excusing a juror for cause, as well as other complex evidentiary rules. Lee further acknowledged his understanding of the court's advisement that, in addition to the rules of evidence, a lawyer is trained in the other rules of law and Ohio criminal procedure, including rules about requesting a mistrial, proper grounds for a mistrial, how to request and object to jury instructions, how to proffer evidence to protect the record for appeal, and how to move for judgment for acquittal, and a lawyer "will argue for your side during the whole trial and present the best legal argument" for the defense.

{¶ 15} The court advised Lee that he would not get any "special treatment" from the Court because he was representing himself. In response to a question by Lee, the

following exchange occurred:

> THE COURT: Well, we're going to explain that further, but generally, because you are not a trained legal professional, and because you had an opportunity to have a trained legal professional, we're not going give you any special breaks or to - - for example, if you ask any objectionable question, we're not going to explain that to you, because you don't have legal training. We're not going to explain to you how to ask it where it might not be objectionable. Do you understand that?
>
> MR. LEE: Yes, I do. May I ask a question about it?
>
> THE COURT: Um-um.
>
> MR. LEE: In a situation like that, am I permitted to confer with my standby counsel?
>
> THE COURT: * * * your standby counsel will be there to ask legal questions. You can confer with them, but you may not delay the trial in order to do so.

{¶ 16} The court advised Lee that if he represented himself, he would also be limited to the resources that were available to him while in custody. "A lawyer has less restriction in researching your defense, he's able to avail himself of the law library and so forth, and any prior cases he has had back in his office, in his files, that he can refer to, and the like."

{¶ 17} When Lee asked if he would have access to a law library in the course of his trial, the court advised him that during trial he would be in the custody of the sheriff's department, that it would be up to the sheriff's department whether it had the time or the

manpower to take him to the library, and that the Court did not have any influence over what the sheriff's department would do. However, the court advised Lee that it would give him an opportunity to inquire as to the sheriff's department's policies regarding such transportation before he made his "full and final decision."

{¶ 18} The court further advised Lee that the State would present its case against him using "an experienced lawyer." The court advised Lee that, if he were disruptive in the courtroom, the court could end his self-representation and remove him from the courtroom, and the trial would continue without him present. The court advised Lee that he would be limited in his ability to move around the courtroom, because he was in custody, and that the bailiff "would have to facilitate any evidence [he] wish[ed] to show to the jury." Lee indicated his understanding of all of these things. The court advised Lee that if a "stay away order" were in effect, he would be prohibited from contacting the victim and any other witnesses to whom the order applied, whereas a lawyer would be allowed "to speak to these people and question them regarding their testimony."

{¶ 19} Finally, the court advised Lee that if he were convicted after representing himself, he could not claim his own incompetence as a basis for an appeal; Lee acknowledged his understanding.

{¶ 20} Lee advised the court that he understood the charges against him and all of the possible penalties. The prosecutor then recited all of the charges against Lee and the maximum prison sentences for each. In response to a question by the court, Lee indicated his understanding that he faced "a maximum of somewhere around 73 years to life" in prison. The court noted, "that's why we're concerned that you're giving up your right to a lawyer."

{¶ 21} The court further stated: "I've heard self-defense and NGRI, but I don't know what, if any, of these you're going to pursue.  But a lawyer knows how to present those defenses, and * * * at least one of them, is fairly technical, and do you understand that for you to present them without that technical knowledge might be damaging to your case?" Lee acknowledged his understanding.  Lee further acknowledged his understanding that the court could not tell him how he should try his case or even advise him about it or help him in any way.  The court advised Lee that the court's "sworn duty" was "to be fair to each side."

{¶ 22} In the course of a series of questions, the court ascertained that Lee was able to read and write and that he had obtained his GED.  Lee advised the court that he has been diagnosed with depression, anxiety, and PTSD.  Lee stated that no one advised him not to use a lawyer or that a jury would be more sympathetic toward him if he represented himself.  Lee acknowledged his understanding that appointed counsel would represent him at no cost, and he stated that he had never served as his own attorney.  When asked if he had any questions related to appointment of a lawyer to represent him, Lee responded, "No."

{¶ 23} When asked if he understood the "danger and disadvantages" of representing himself in court, Lee indicated that his only concern was that he would be hindered from properly defending himself because of lack of "legal access."  The court responded that, "at the appropriate time," Lee would be given the "right to object to that and preserve that for appeal."

{¶ 24} The court asked Lee if, in light of the penalties that he might suffer if he were found guilty and all the difficulties of representing himself, it was still his desire to

represent himself and to give up his right to be represented by a lawyer. Lee responded affirmatively. The court then advised Lee that "standby counsel" was "not there to conduct legal research for [him], but within restrictions, [could] help [him] answer procedural questions during the trial"; Lee acknowledged his understanding.

{¶ 25} At the conclusion of the colloquy, the court found that Lee had knowingly and voluntarily waived his right to counsel and stated that it would permit him to represent himself "at the trial of this matter beginning at 8:30 on Monday morning."

{¶ 26} After a discussion about the appearance of Lee's name on the waiver of counsel form, the following exchange occurred:

THE COURT: * * * [T]he Court is satisfied with how [the waiver of counsel form has] been prepared.

MR. LEE: The Court is satisfied - -

So it's a force -- it's -- basically I'm being forced into this contract right here.

[DEFENSE COUNSEL]: No, you're not. He's saying you don't have to sign - -

MR. LEE: I don't consent to - - I don't consent to the contract.

[DEFENSE COUNSEL]: Right, so if you don't consent to it, then you're going to have a - - you're going to have a lawyer represent you.

* * *

MR. LEE: This is the problem. * * * I have representation at one point * * *. Now, the reason I am choosing to represent myself is because I am not being allowed to get all of the discovery that I'm supposed to have,

and I (indiscernible), because I should be allowed to view everything that's being said against me, okay. And I put a motion in for it, but I was told, because my attorney didn't put the motion in, then * * * it couldn't be a decision on this motion, right? And I understand that. So in order for me to have that kind of power, I have to represent myself.

If I don't represent myself, I'm under the impression that if I don't represent myself, then when these motions get put in, if * * * my attorney don't put it in, it won't get done. So when I sit here and I ask the Court, I say I would like to view the videos, right? Everybody else has them; everybody else has seen them. Everybody else has access to them but me, the Defendant. * * *

* * *

So when I get something from the prosecutor that's like this, that I got labeled with 20 different names, 20 different people give me 20 different statements, and then I get the actual statements from one person that's just as thick as the statements from 20 people, and I realize that these are the true original statements given by the people in this discovery that was provided to me from the prosecutor, then I have a problem because I say, okay, this is not what's said.

Now when I read these statements, the original statements, that has been audio recorded that I know exists, and then I go back and I find this woman, her name, and the statements that's made in here, and I realize that out of 65 pages, the prosecution has - - or detectives have took the

same statement and bundled it into one paragraph. And it says nothing about the things or the actual occurrence of the events that actually happened. It only says what it's believed that Chuckie Lee did. * * *

* * * I'm not an attorney; I'm not a lawyer. But I do know that I have a right to get the discovery and be allowed to view this discovery and inspect this discovery, okay. And that's the only thing I'm asking. I'm asking that, at least, if I'm going to trial, let it be a fair trial.

I get on the stand -- or somebody get on the stand and say something about me, and I say, oh, well, this doesn't exist, I never heard this before. Well, your attorney do, your attorney got it, why haven't you seen it? It becomes an issue like this. * * * But when I'm asking to at least see these things or inspect these things for myself because of a time issue, because a person doesn't have time to do it, then it's a issue, because now I'm being deprived a right to view or inspect the things that I need to inspect. * * *

* * *

THE COURT: Mr. Lee, let me interrupt you and tell you that number one - - three things. Number one, make no mistake, we are going to trial on Monday. Okay. You understand that.

Number two, I'm wondering, as I hear you talk, if you'd rather represent yourself on your appeal rather than the trial, because you've got all the objections after now three lawyers and so forth, that you'd like somebody besides me, apparently, to hear.

So - - and finally and I'll just mention this; I don't normally do this.

But I'll tell you that we have for you perhaps the finest lawyer in Southern Ohio, certainly the finest lawyer that's ever tried a defense case in this courtroom, sitting with you, and if you don't want him to represent you, that is entirely up to you, and we can't, try as we might, we're not going to change your mind.

So do you want to sign the waiver of counsel or no?

MR. LEE: I would like to be given the opportunity to see the discovery. * * *

* * *

MR. LEE: * * * All I'm saying is that I would like to see the discovery. I would like to see the discovery in its entirety, and not bits and pieces, not notes. I'm getting notes. * * *

* * *

THE COURT: * * * I think that maybe where Mr. Lee is confused is after each of the prior times when there was change of counsel, we vacated the trial date and gave that counsel time to - - and so he might be thinking that now, at the eleventh hour, he's going to choose himself for a lawyer and be able to vacate the trial date, and so Mr. Lee, if you were thinking of that, I - - I've advised you that's not going to happen.

* * *

MR. LEE: I would like to ask a question.

The first time I seen you, the very first time that I asked you and tell you that I wanted to see the videos of every witness that has a audio/video

against me - -

THE COURT:    Mr. Lee, if you'd like to talk this over with your - - your lawyers, we'll permit you to do that in private. * * *

MR. LEE:    I mean, I understand what you're saying, and you know, it's for a private attorney/client confidentiality, but the question I - - what I just asked is just the matter of did I ask to see them when I first spoke to you.   To - -

THE COURT:    Once again, Mr. Lee, you're talking about appellate issues. * * * I've indicated to you we're not going to postpone the trial to give you a chance to get what you think you haven't received yet, and we're going to proceed on Monday with competent counsel, or with you, depending on your decision here today.    * * *

(Pause in proceedings)

THE COURT: * * *Well, asking you one final time, Mr. Lee, are you going to sign the waiver of counsel or not today?

MR. LEE:    I have to ask one question.   In signing this waiver, will I then be allowed to view these videos and go over these things and look at -- so no as to even if I'm my own counsel, I still won't be able to have discovery, right?   Is that - - just for the record, because we on the record. I just want to know, like, will I be able to go over - -

THE COURT:   The Court has no control over that.   Whether you are able to view discovery or not, that is a matter between you and your counsel, and the Court declines to interfere with that * * *

MR. LEE:   But if I am counsel * * *

* * *

MR. LEE: -- then it's my understanding that I should be able to have a right - -

THE COURT:   * * * The exercise of those rights, Mr. Lee, must be made in a timely fashion.   We let you by once with that on the NGRI filing, where we vacated a trial date at the eleventh hour.   We are not going to entertain anything that will delay this trial any further * * *

MR. LEE: * * * So basically, if I'm representing myself, I still can't see the discovery, is what's being said?

THE COURT:   Oh, I'm sure that prior counsel will provide you with that information, whether they will not be any longer required to or able, frankly, to provide information on which you might review or listen to that, but we need to know whether you're going to - - I've answered all the questions I'm going to answer.

* * *

MR. LEE:   I would like to defend myself, and at the same time, I would like to be able to see the videos.   I would like to be able to get the original interview documents, not this.   This is not * * * what was said in the interview. * * * I'm not asking for nothing that's not available.   I'm asking for something that it's in - - it's in the hands of the prosecutor.

[DEFENSE COUNSEL]:   They didn't transcribe the video.

MR. LEE:   So if they didn't transcribe the video, then allow me to

see the video. * * *

(Pause in proceedings)

THE COURT: Counsel, while you are still counsel, have we a signed waiver?

* * *

[DEFENSE COUNSEL]: We do not have a signed waiver.

THE COURT: * * * Mr. Lee, last chance. Are you going to sign that waiver?

MR. LEE: You're telling me * * * I have all these disadvantages, yet I don't even, even if I sign the waiver, I don't even have the advantage of being able to see and go through and look at the evidence that's against me that's part of the discovery, so either way it go, * * * I got two brick walls, one in front of me, one in the back of me, and I can't go anywhere. * * * [I]f I go in the courtroom off of the statements on this piece of paper, without these right here, which is the statements that I can really fight - -

THE COURT: Ms. Mel[chor] and Mr. VanNoy, I know that you have been preparing to try this case, since you were appointed on it. We're going to find at this point that, because of discovery issues, the Defendant is not willing to waive his right to trial by counsel. We will - -

MR. LEE: That's not what I said.

THE COURT: -- proceed to trial * * * at 8:30 on Monday morning --

MR. LEE: That's not what I said, sir.

THE COURT: - - with counsel.

MR. LEE:   That's not what I said.

THE COURT:   Court's in recess.

MR. LEE:   Have you seen the videos?

THE BAILIFF:   All rise.

(Recess taken)

THE BAILIFF:   This Court is again in session. * * *

THE COURT: * * *

Beginning at approximately ten minutes after 3, this Court began a dialogue with the Defendant regarding his professed desire to proceed in this matter to trial on Monday without counsel.   We, during that time period, discussed the advantages of proceeding with counsel, the disadvantages of proceeding without counsel, and Mr. Lee indicated that he understood all of those, but after some 20 minutes, I would estimate, discussion ending at approximately ten minutes after 3 [sic], the Court found that due to Mr. Lee's perceived difficulties with discovery that -- the Court concluded his prolonged reluctance to sign the waiver indicated his desire to proceed with counsel just seven or eight minutes ago at -- or about ten minutes after we recessed, we learned that Mr. Lee is ready to sign the waiver of counsel.

* * *

[DEFENSE COUNSEL]:   Your Honor, Mr. Lee would like to execute the waiver of counsel.

THE COURT:   Okay. Very well.

[DEFENSE COUNSEL]:   Mr. Lee?

(Defendant signs document)

MR. LEE:   For the record, * * * I agree to represent the Defendant, which is myself, *but not to proceed, because I'm not ready.* I haven't seen the discovery, * * * there's a lot of things in my discovery that I don't have in my possession.

THE COURT:   Can you see this document?   Is that your signature on there?

MR. LEE:   I can't see this from - - I can't see it from up here.

THE COURT:   If you could stand a little closer so he can see it and show it to him.

(Reading document)

MR. LEE:   Okay, but it doesn't say anything about me being ready to proceed.   I don't have the discovery.

THE COURT:   We're [sic] just indicated that, at this point, whether you want to proceed without counsel.

MR. LEE:   I want to proceed in being counsel to represent myself. I am not ready for trial, because I don't have the discovery.

THE COURT:   Very well.   Is that your signature that appears on that document?

MR. LEE:   Yeah, that's the name signed.

THE COURT:   The Court approves this, finding the Defendant has knowingly and voluntarily waived his right to be represented by counsel. As indicated previously, we'll proceed to trial at 8:30 on Monday morning.

Mr. VanNoy, the Court will then grant your motion to withdraw as trial counsel and appoint you as standby counsel for procedural issues. * * * (Emphasis added.)

{¶ 27} Lee's August 9, 2018 Waiver of Counsel, on which his printed name and the trial judge's signature appear, states:

Now comes the Defendant, Chuckie Lee, pursuant to Ohio Criminal Rule 44(C), and after having been fully advised of my right to have assigned counsel for the above captioned case, and after being fully advised by the Court of the nature of the charges against me, the statutory offenses within, the range of allowable punishments for each offense, possible defenses, mitigation, and the general dangers and disadvantages of self-representation, do hereby make a knowing, voluntary and intelligent waiver of my right to counsel.

I understand that I will represent myself at all future stages of the criminal prosecution. This would include any motions, hearings, and/or trial. No one has forced, threatened or promised me anything in order for me to waive my right to counsel.

{¶ 28} On August 13, 2018 (the day of trial), Lee filed pro se motions for transcripts of the grand jury proceedings, to preserve evidence, for an expert witness, for an evidentiary hearing, and for a continuance. In his motion for a continuance, Lee asserted that the request was for good cause so he could "adequately prepare his defense." Lee argued that he had "not been afforded the opportunity" to inspect video surveillance or to listened to audio 911 calls. Lee also asserted that the record "clearly reflect[ed] that

discovery ha[d] been withheld" from him by previous attorneys, and that it was his belief that his inability to review all the evidence the State intended to use against him at trial would greatly impair his defense and deprive him of his "right to Confrontation." Lee requested "access to media, to view video surveillance from bar, listen to 911 calls, receive discovery, and compel witnesses to take the stand that worked the morning shift of the day in question of the alleged event." He further sought "text messages from personal cell phone * * *."

{¶ 29} The trial began as scheduled on August 13, 2018. Outside the presence of the jury, prior to voir dire, the court noted that Lee had filed a number of motions that morning, many of which had been previously overruled. Regarding Lee's motion for a psychological/psychiatric expert, the court found that that was "untimely made and would cause undue delay" and that such a matter "ought to have been advanced far in advance of trial"; it overruled the motion.

{¶ 30} The following exchange occurred:

THE COURT: * * * Mr. Lee, we're going to advise you that we understand that you have or may have an objection to whatever discovery you have received or failed to receive. * * *

* * *

THE COURT: Have you any objections as to discovery which you claim has not been provided or not been timely provided?

MR. LEE: Yes, I do. * * *

* * *

MR. LEE: * * * I don't know it may seem like that I filed these motions

in an untimely manner but I have proof that I actually sent these motions to my previous attorneys because these are the same motions that they had turned over to Mr. VanNoy.

THE COURT: And for the record, the Court has heard this frequently and for a long time. And in light of the demonstrated history in this matter of last minute requests for the purpose of delaying trial, the Court has - - that argument would be considered, but not where it doesn't change the Court's mind.

MR. LEE: I was trying to address it but I didn't get a chance to really address it. * * *

THE COURT: * * * Well, go ahead.

MR. LEE: Every motion that I filed I got previous filings or previous instructions to have my attorneys file and this is dated back to last year, all the way to 2017 up until I think the most recent was back in like January. I got the motions here * * * -- they have been copied by the previous attorneys but they never put the motions in. * * * All I can do when I'm sitting in this room with my attorney is tell him, listen, * * * I need you to file this motion for me. I can't make them do it. * * *

That's * * * why I choose to * * * represent myself because it seemed like some of these things that I needed to be done, it wouldn't be done no matter how many times I ask or what I ask, it's just like the NGRI. * * * I * * * told Michael Pentecost, and this is dated back to April of last year, and it's 2017 where I told him, I said, "Listen, * * * I need you to * * * go to the

Nova [H]ouse, go to the federal building, * * * or fax them just to get the paperwork back and I would * * * sign whatever consent or release form I needed to sign. He didn't do it so what I did, I had to write the judge myself. That's when I found out * * * well this is maybe go this route when I end up writing the judge myself, I ended up getting[ ] the same papers that I had been asking them for which is why the NGRI was granted on the second motion.

That's the same scenario with the rest of these motions that I have filed or that I have asked to be filed and they're not getting filed by the attorneys that I'm asking to file them, which is both Bradley Baldwin and Michael Pentecost. And like I said, I got all the records right here to show that I actually asked them to file. They got them in they files [sic]. They got the motions that I did pro se and they say well, let me do it, let me see your motions; I'm gonna copy them. But they never did nothing with them.

So it's not that I didn't do it in a timely manner, it's that the previous attorneys wouldn't represent my position. They wouldn't - - the things that I was asking them to do, they was not allowing me to do. It's like these videos. I been asking to see these videos since April of last year. It's no reason why I've only seen two or three videos.

Then * * * I'm getting field notes from officers and detectives that's saying one thing just - - just prime example. Here's one, and you got statements given to - - from [State's witness] Candace Allen, Detective David House where she says one thing then on another day she say

something totally different, but this is a four paragraph statement.

This is the real discovery. The discovery is * * * 65 pages long. And then there's discovery - - I did a match up last night and everything that's highlighted is the difference in another discovery. * * *

So I'm trying to figure out why this say something different than the other transcribed one and then that say something different than what the videos say. * * * It's contradictions on all three, but they supposed to be transcribed. * * * I got a brief right here. Everybody who got different statements by different officers and different detectives. And in every statement they saying something totally different. That's why I put in the motion for the grand jury transcripts for impeachment purposes because if these are different and they 'posed to be the same thing, the interview was different than what these say and then the field notes is different than what the interviews say * * * I mean, I'm not saying, you know, bad police work, misconduct, or none of that. But what I will do, I'ma [sic] raise the issue because I don't see how things change from one person to the next. I don't know if it's going through the hands and we gonna take this out, we gonna take this out. Because like I said, I cross-referenced it with things and this is not nothing.

* * * I been in jail 16 months. This was given to me in discovery from one lawyer to the next lawyer to the next lawyer and it's changed in between lawyers. And like I said, I have everything right here to say that.

[Lee identified six State's witnesses who he claims gave different

statements at different times.]

So what I see is, is that when I'm looking over the subpoena list and I see the 75 witnesses on my subpoena list. * * * And when I'm [sic] asked them for these videos, all of sudden they saying that, * * * well, these are just from field notes. * * * So * * * let me see the field notes so I can cross them with this because in a murder investigation and my understanding, interviews are 'posed to be recorded. * * * I have asked for that.

* * * [S]o when they doing these interviews, if they are 'posed to be recorded, I don't understand why it's the ones that's contradictory to each other that's not the recorded ones and then the ones that are recorded, I'm not being allowed to see them.

You got [two specific witnesses] that's in the same car. First, she says I'm crossing the street from one corner to the next, the next she say she seen me just standing in the middle of the street and then in the statement, he say she's screaming, "They chasing us." * * * Am I on the car? Am I crossing the street?" * * * I'm getting so many different state - - half of the stuff that's in here I really don't believe.

I really don't believe and I feel like under the compulsory process, which is right here, it gives the accused the right to call for evidence in his favor, to be able to impeach is in my favor. * * *

I have not had this. I'm representing myself. * * *

THE COURT: * * * We're going to have to ask you, Mr. Lee, to state concisely * * * what your objections are regarding discovery * * *.

MR. LEE: * * * My objections are my 6th Amendment rights are being violated believe [sic] I'm not given the opportunity and my due process, for the record, I'm not given * * * discovery in its full, full disclosure. I'm getting' [sic] bits and pieces of what they want to give me. And under the 6th Amendment * * * I'm 'posed to be provided that. * * * It's my right to be able to personally inspect it for my own self.

* * *

[THE PROSECUTOR] Your Honor, to address - -

* * *

[THE PROSECUTOR]: - - address the discovery issue, the state has provided Mr. Lee * * * ten copies, these are electronically filed discovery receipts of all the discovery that the state has provided to the defense throughout the course of this case which has been going on over a year * * *. The itemized list shows everything the state has turned over. We have fully complied with Criminal Rule 16 in that regard.

* * *

So Mr. Lee's argument seems to be more in gear (sic) of impeachment testimony that will be brought forth during the trial phase of this during the witnesses' testimony. * * *

{¶ 31} After advising Lee that he would be permitted to attend the jury view, the court asked Lee, "Can you assure the Court at this time that you continue to want to represent yourself in this case without a lawyer?" Lee responded, "Yes."

{¶ 32} When the court indicated it was moving on to voir dire examination, Lee

asked a question, leading to the following exchange:

MR. LEE:   * * * I'm not able to view the rest of my discovery, just for the record?   I just want to know is this - - that's the final verdict that I will not be able to see these videos and none of that, or be able to inspect for my own personal inspection. * * * Is that the judge's decision in this matter, sir?

THE COURT:   Well, that's an appellate issue. If the prosecuting attorney has failed to provide you or your attorney with - -

MR. LEE:   I am my attorney.

THE COURT:   * * * Hear me out and then - - if the prosecuting attorney has failed to provide your lawyer or you with all lawful discovery, or if your lawyer or any of your previous lawyers in this case have failed to provide you with the discovery which they have received in this case, then in each of those cases, those are appellate issues which we are not going to deal with at the trial level. * * * So, the discovery issues [sic] over.   You've made your objections as to the discovery and we'll not hear about them again.

Yes?

MR. LEE:   It was the point when I was making my objection I was cut off before I could finish my objection.

* * *

THE COURT: - - for the record, to clarify, your objection regarding discovery is that either you have not been given it or it was not given to you

in a timely fashion to prepare for trial; is that right?

     MR. LEE:   I have not seen it.   My attorney has been given it - -

     THE COURT:   I.e., it was not given to you?

     MR. LEE:   Right.   No, it was not given to me. * * *

     THE COURT: * * * And that's your objection?

     MR. LEE:   That is my objection.   My objection is I don't have the discovery.   Previous attorneys had it and they did not let me view it.

     * * *

     THE COURT:   And I understand that objection.

     * * *

     THE COURT:   And I think you've made it for the record.

{¶ 33} After a discussion regarding Lee's motion for an expert witness, the following exchange occurred:

     THE COURT:   And, Mr. Lee, the other thing that you would know if you were an attorney is that if you have things that you want done, like the time to prepare your own defense representing yourself, you got to do that in a timely fashion well in advance and you failed to do that.

     We've continued this matter three times now and we're not going to continue it again and we've explained that to you and - -

     MR. LEE:   The only reason why I'm representing myself is because it wasn't getting done. * * * I'm being denied a chance to do it on my own. You right, I'm not an attorney.   That's why it's so much more harder for me to do it.

So I get this stuff and in three days I'm supposed to be ready for trial and I don't even know what's out there.   I ain't even seen half the videos that they got.   Mr. VanNoy showed me a stack of videos yesterday in his hand.   I don't know what's on them videos.   All I know is the one or two that I have seen, it's not what's on this paper and what I see on this paper, it's changed from * * * officer to officer with the same person. * * *

THE COURT:   Mr. Lee, once again, you've already made your objection about not getting discovery.

* * *

MR. LEE:   What about the motion to preserve evidence for appellate purposes?   I filed a motion for that.

* * *

THE COURT:   Well, we'll grant that motion to the extent that it means anything at this point. * * *

* * *

THE COURT:   Anything else?

MR. LEE:   The motion should have been here a couple few days ago; I gave it to the sheriffs.   And that was - - you told me * * * last time when I was asking about me getting[ ] to law library.   You said, everything I had to do, I had to do through the sheriffs.   I gave him a motion.

* * *

MR. LEE:   So, I don't know if you got it on your desk this morning or however that went but it was sent to the Clerk of Courts, and that was a

motion - - that was the actual motion for continuance in this matter because of these reasons. * * *

THE COURT: Very well. The motion for continuance if not made in writing, certainly now made verbally is overruled pursuant to what the Court has indicated repeatedly in this matter over the last week.

{¶ 34} The case proceeded to trial, with Lee representing himself. He was found guilty by the jury of two counts of murder, six counts of felonious assault, and one count of discharging a firearm at or near a prohibited premises. He was also found guilty by the court of two counts of having weapons under disability. After merger of several offenses, Lee was sentenced to an aggregate term of 61 years, as discussed above.

{¶ 35} Lee's first assignment of error is as follows:

THE TRIAL COURT ERRED BY DENYING MR. LEE HIS RIGHT TO COUNSEL BECAUSE HIS WAIVER OF COUNSEL WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY. * * *

{¶ 36} Lee asserts that it is clear from the record that he did not agree to represent himself at a trial that would begin only days after the trial court accepted his waiver of counsel. According to Lee, his assertion of his right to self-representation, but not without a continuance, wass not a clear and unequivocal assertion of the right.

{¶ 37} The State responds that, as a whole, the record and "particularly the protracted [inquiry] conducted by the trial court" show that Lee's decision to forego representation by counsel and to instead represent himself at trial was made knowingly, intelligently, and voluntarily. The State asserts that, during the hearing on his motion to represent himself, Lee acknowledged his full understanding of the advantages of being

represented by counsel and the disadvantages of self-representation, but "indicated unequivocally that it was his desire to represent himself," and despite learning that the trial would not be continued, Lee "never requested to withdraw his waiver of counsel" or gave any indication that he had changed his mind about representing himself. The State asserts that, despite the discovery dispute and his clear desire that the trial be continued, Lee never conditioned his waiver of counsel on being granted a continuance, and his claims to the contrary are "simply unsubstantiated."

{¶ 38} The State argues that "Lee does not challenge the fact that, before allowing him to represent himself, the trial court fully explained to Lee the nature of the charges against him, the advantages of allowing counsel to represent him, and the dangers and disadvantages of proceeding to trial on his own"; therefore, Lee "knew what he was doing and was fully aware of the risks of doing it." According to the State, Lee's only basis for claiming that his waiver of counsel was not knowing, intelligent, and voluntary is that his waiver was "*conditioned* on the trial being continued." According to the State, Lee gave no indication that, if the court insisted on proceeding with the August 13, 2018, jury trial as scheduled, then he wanted to withdraw his waiver and proceeding to trial with counsel. The State asserts that Lee advised the court that he "wanted to represent himself *and* he wanted the trial continued; his request for one was never conditioned on the trial court granting the other." In fact, on the morning of trial, "with the jury waiting and his hope for a continuance gone for good, Lee was asked a final time if he still wanted to represent himself without a lawyer," and he said that he did. Thus, the State concludes that Lee's "contention that his waiver of counsel was conditioned on the trial also being continued is unsubstantiated and belied by the record.

{¶ 39} In reply, Lee argues that he did not merely tell the trial court he wanted to represent himself and that he wanted a continuance for trial scheduled within days; he 'specifically told the court that if he did not get a continuance, *he was not ready to represent himself*." He draws our attention to his assertion in the trial court that he agreed to represent himself, but not to proceed, because he was "not ready" to represent himself. Lee argues that his waiver was "unclear and equivocal," and that a valid waiver must be both clear and unequivocal.

{¶ 40} We conduct an independent review to determine whether a defendant voluntarily, knowingly, and intelligently waived his right to counsel based on the totality of the circumstances. "Courts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right including the right to be represented by counsel." *State v. Dyer*, 117 Ohio App.3d 92, 95, 689 N.E.2d 1034 (1996).

> We appreciate that waiver of counsel is a stormy sea for a trial court to navigate. There is even a foundational question as to whether a defendant is waiving a right (assistance of counsel) or asserting a right (self-representation). Further, the self-representation right has itself been limited by the allowance of appointment of standby counsel over the self-represented defendant's objection, *McKaskle v. Wiggins*, (1984), 465 U.S. 168, 178-179, 104 S.Ct. 944, 79 L.Ed.2d 122, and the mandatory representation by counsel at trial on the ground the defendant is competent to stand trial, but lacks the mental capacity to conduct his trial unless represented. *Indiana v. Edwards*, (2008), [554] U.S. [164], 128 S.Ct. 2379, 171 L.Ed.2d 345. And if the judge makes the wrong call, either the

complete denial of counsel, *Johnson v. United States*, (1997), 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718, citing *Gideon [v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)]*, supra, or the denial of self-representation constitutes structural error which requires automatic reversal. *McKaskle*, supra; *State v. Reed*, (1996), 74 Ohio St.3d 534, 660 N.E.2d 456.

*State v. West*, 2d Dist. Greene No. 2015-CA-72, 2017-Ohio-7521, ¶ 47, quoting *State v. Gatewood*, 2d Dist. Clark No. 2008 CA 64, 2009-Ohio-5610, ¶ 33-34.

{¶ 41} To ensure that a waiver of counsel is made knowingly, intelligently and voluntarily, the trial court must make sufficient inquiry to determine whether a defendant fully understands and intelligently relinquishes that right. *State v. Johnson,* 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144; *State v. Gibson,* 45 Ohio St.2d 366, 345 N.E.2d 399 (1976). This Court has previously noted the U.S. Supreme Court's holding that:

" ' * * * "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." [*Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).] To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case

before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.' (Citations omitted.)"

*State v. Albert*, 2d Dist. Montgomery No. 23148, 2010-Ohio-110, ¶ 12, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723-724, 68 S.Ct. 316, 92 L.Ed. 309 (1948) and citing *State v. Engle,* 183 Ohio App.3d 488, 2009-Ohio-1944, 917 N.E.2d 817, ¶ 9-10.

{¶ 42} The Tenth Circuit noted in *United States v. Hansen*, 929 F.3d 1238, 1249-1251 (10th Cir.2019):

The "tried-and-true method" for a district court to assess whether a waiver is being made knowingly and intelligently is to "conduct a thorough and comprehensive formal inquiry of the defendant on the record." [*United* [*State v.*] *Vann*, 776 F.3d 746, 763 [(10th Cir.2015)] (quoting *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir.1991)). Such a formal inquiry typically takes place in the context of a waiver hearing, customarily referred to as a *Faretta* hearing, in recognition of the Supreme Court's seminal

waiver case, [*United States v. Faretta*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).] *See id.* *Faretta* hearings are intended to "ensure[ ] the defendant is not unwittingly or impulsively disposing of his constitutional right to counsel," *id.*, by determining whether "the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se," [*United States v. Williamson* ("*Brett Williamson*")], 859 F.3d [843,] 862 [(10th Cir. 2017] (quoting *Vann*, 776 F.3d at 763). These topics of inquiry stem from Justice Black's plurality opinion in *Von Moltke* [332 U.S. at 724, 68 S.Ct. 316].

\* \* \*

The Supreme Court has emphasized that the requisite thoroughness of the district court's inquiry into the relevant factors should be viewed through a "pragmatic" lens—that is, the degree of thoroughness should correspond to how "substantial" and "obvious" the dangers of self-representation are at any particular stage of the criminal proceedings. *Patterson v. Illinois*, 487 U.S. 285, 298, 299-300, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988); see [*Iowa v. Tovar*, 541 U.S. 77, 90, 124 S.Ct. 1379, 158 L.Ed. 209 (2004)]. ("*Patterson* describes a 'pragmatic approach to the waiver question,' one that asks 'what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage,' in order 'to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and

procedures that should be required before a waiver of that right will be recognized.' " (quoting *Patterson*, 487 U.S. at 298, 108 S.Ct. 2389)).   Thus, as relevant here, the Supreme Court "require[s] a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than [it] require[s] for a Sixth Amendment waiver during postindictment questioning."   [*Id.* at 229.] More specifically, "[w]arnings of the pitfalls of proceeding to trial without counsel ... must be 'rigorous[ly]' conveyed." *Tovar*, 541 U.S. at 89, 124 S.Ct. 1379 (second alteration in original) (quoting *Patterson*, 487 U.S. at 298, 108 S.Ct. 2389).

"[W]e 'indulge in every reasonable presumption against waiver.' " *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir.) (quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977)), * * *; *see Von Moltke,* 332 U.S. at 723-24, 68 S.Ct. 316 ("To discharge this duty [of inquiry] properly in light of the *strong presumption against waiver* of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." (emphasis added) (footnote omitted)); *United States v. Padilla*, 819 F.2d 952, 956 (10th Cir. 1987) ("The task of ensuring that defendant possesses the requisite understanding initially falls on the trial judge, who must bear in mind the *strong presumption against waiver*." (emphasis added)); *United States v. Williamson* ("*John Williamson*"), 806 F.2d 216, 219-20 (10th Cir. 1986) ("Courts indulge every presumption against the waiver of fundamental constitutional rights. ... [D]oubts concerning an attorney waiver

must be resolved in the defendant's favor ...." (citations omitted)).

Nevertheless, the Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88, 124 S.Ct. 1379. Relatedly, the Court has acknowledged that "[t]he information a defendant must possess in order to make an intelligent election ... will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.*; *see Johnson*, 304 U.S. at 464, 58 S.Ct. 1019 ("The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.").

Our caselaw embodies the substance of the Supreme Court's pragmatic approach. Notably, in *Padilla*, although we held that "the trial judge should conduct an inquiry sufficient to establish a defendant's knowledge and understanding of the factors articulated in *Von Moltke*," we also made clear that "[n]o precise litany is prescribed" for the court's knowing-and-intelligent inquiries. [*Padilla*], 819 F.2d at 959.

And, relatedly, our cases have repeatedly stressed that the knowing and intelligent nature of the waiver of the right to counsel turns on the "totality of the circumstances, including the background, experience, and conduct of the defendant." *John Williamson*, 806 F.2d at 220; *see Vann*,

776 F.3d at 763 ("We reflect on the totality of the circumstances to decide whether a defendant has knowingly [and intelligently] decided to proceed *pro se.*"); *Padilla*, 819 F.2d at 958 (recognizing that "the question of an intelligent waiver turns not only on the state of the record [including presumably the court's inquiry into the *Von Moltke* factors in a *Faretta* hearing], but *on all the circumstances of the case*, including the defendant's age and education, his previous experience with criminal trials, and representation by counsel before trial" (emphasis added)); [*United States v. Weninger*, 624 F.2d [163] at 164 ("To ascertain whether [a defendant] knowingly and intelligently waived his right to counsel, we must consider 'the total circumstances of the individual case including background, experience and the conduct of the accused person.' " (quoting *United States v. Warledo*, 557 F.2d 721, 727 (10th Cir.1977))); *see also Turner*, 287 F.3d at 983 (endorsing an inquiry into "the surrounding facts and circumstances" to determine whether a defendant knowingly and intelligently waived the right to counsel); *cf. John Williamson*, 806 F.2d at 219 (noting that "[e]ach case must be reviewed individually, with the objective of determining whether the judge fully inquired into the circumstances").

{¶ 43} In *United States v. Ductan*, 800 F.3d 642 (4th Cir.2015), the Fourth Circuit further noted:

In addition to requiring that a waiver be knowing and intelligent as a constitutional minimum, we have imposed one other requirement. In *Fields,* we noted the "thin line between improperly allowing the defendant

to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." [*Fields v. Murray*,] 49 F.3d [1024] at 1029 (internal quotation mark omitted). Acknowledging that "[a] skillful defendant could manipulate this dilemma to create reversible error," we held that a waiver of counsel through the election of self-representation must be more than knowing and intelligent: it must also be "clear[ ] and unequivocal[ ]." *Id.* We explained that this requirement "greatly aids the trial court in resolving this dilemma" by allowing the court to presume that "the defendant should proceed with counsel *absent an unmistakable expression by the defendant that so to proceed is contrary to his wishes*." *Id.* (emphasis added).

*Id.*, quoting *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir.1995).

{¶ 44} Lee directs our attention to *United States v. Simpson*, 845 F.3d 1039 (10th Cir.2017), which noted:

The Sixth Amendment provides criminal defendants with the right to represent themselves. *Faretta v. California*, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). But this right lies in tension with the Sixth Amendment right to counsel. *Id.* at 832 * * * (noting that self-representation "cut[s] against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel"). The right to counsel helps to assure a defendant a fair trial. *Id.* at 832-33 * * *. By contrast, self-representation ordinarily undermines the defendant's

chance of a favorable outcome. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). In light of this reality, we have noted that the right to counsel serves "both the individual and collective good," while the right to self-representation protects only "individual interests." *United State v. Mackovich,* 209 F.3d 1227, 1237 (10th Cir.2000) (citation omitted).

This distinction results in "constitutional primacy" of the right to counsel. *United States v. Smith*, 413 F.3d 1253, 1280 (10th Cir.2005) (citation omitted), *abrogated on other grounds by Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). Partly because of the primacy of that right, a defendant wanting to proceed pro se must satisfy four requirements:

> First, the defendant must "clearly and unequivocally" inform the district court of his intention to represent himself. Second, the request must be timely and not for the purpose of delay. Third, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is "knowingly and intelligently" made. Finally, the defendant "must be 'able and willing to abide by rules of procedure and courtroom protocol.' "

*United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir.2006) (citations omitted). In evaluating whether the defendant satisfied these requirements, we "indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d

424 (1977); *Smith*, 413 F.3d at 1280 (citation omitted).

* * *

In requiring "clear and unequivocal" expression of a request for self-representation, we protect not only the defendant but also the trial court. *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir.2000); *United States v. Miles*, 572 F.3d 832, 836 (10th Cir.2009). Without a clear and unequivocal request, the court would face a dilemma, for an equivocal demand creates a potential ground for reversal however the trial court rules. *Miles*, 572 F.3d at 836. If the court determines that the defendant wants to proceed pro se, the defendant can assert a violation of the right to counsel; if the court provides counsel, the defendant can assert a violation of the right to proceed pro se. *Id.*

By requiring the self-representation request to be clear and unequivocal, we prevent the trial court from having to guess at the defendant's intent. *Id.* at 836-37. Instead, the court can infer intent from the defendant's conduct and representations. *Id.* at 837; *see also United States v. Loya-Rodriguez*, 672 F.3d 849, 858-59 (10th Cir.2012) (finding no clear request—even though the defendant expressly stated in a letter that he wanted to communicate without his attorney—because the letter, when "taken as a whole," could "fairly be read" to conclude that the defendant was not requesting self-representation). Thus, the absence of a clear, unequivocal request can allow the court to reasonably infer that the defendant does *not* wish to proceed pro se. *Miles*, 572 F.3d at 837.

(Footnotes omitted.) *Simpson* at *1046-47.

{¶ 45} The following facts were relevant in *Simpson*:

At a hearing on the morning of trial, Mr. Simpson presented two motions: a written motion to represent himself and an oral motion to continue the trial. The district court asked Mr. Simpson if he was prepared to represent himself without a continuance, and he responded that he was not. From this exchange, the district court apparently understood that Mr. Simpson was not asking to represent himself if the trial were to proceed that morning. Based on this apparent understanding, the court denied the motion for self-representation, reasoning that it had been untimely.

*Id.* at *1044.

{¶ 46} The Tenth Circuit concluded that Simpson's written motion did "not expressly ask for a continuance, but implicitly did so by mentioning future discovery procedures. The second was an oral motion for a continuance, which was based on the request for self-representation." *Id.* at *1047. The Tenth Circuit noted that, read together, "the two motions stated that Mr. Simpson wanted to obtain more time for trial and to represent himself at the eventual trial." *Id.* The Tenth Circuit found that the district court had "conflated the two motions and denied them" and that "Simpson did not clearly and unequivocally state that he wanted to represent himself even without a continuance." *Id.* at *1047-48.

{¶ 47} The Tenth Circuit further conducted the following analysis:

* * * We must consider Mr. Simpson's statements in context and consider the inferences reasonably drawn by the district court. *See United*

*States v. Miles*, 572 F.3d 832, 837 (10th Cir.2009) (district court may "reasonably dr[a]w ... inference[s]" from a defendant's action or inaction to decipher the defendant's intent). Thus, even when defendants appear to request self-representation, their other statements or actions may render the requests unclear or ambiguous. *See United State v. Bennett*, 539 F.2d 45, 50-51 (10th Cir.1976) (defendant expressly requested self-representation, but his additional statements rendered his position on self-representation unclear); * * *.

The written self-representation motion indicated a desire to engage in further discovery. Then, when the pretrial hearing began, Mr. Simpson orally requested a continuance. This request led the district court to ask Mr. Simpson if he was prepared to represent himself without a continuance; Mr. Simpson answered that he was not. This answer led the court to understand that Mr. Simpson did not want to proceed pro se without a continuance.

We do not know if this understanding was correct, but it was at least reasonable. *See Miles*, 572 F.3d at 837. Mr. Simpson could easily have clarified that he wanted to represent himself even without a continuance. But he admittedly "never asked if this w[ere] an option." * * *

In similar circumstances, we have indicated that the trial court could reasonably conclude that defendants wanted to represent themselves only if certain conditions were met. For example, in *Stalling v. Franco,* the defendant filed multiple motions, one stating that he wanted to proceed pro

se but adding: " 'Although I did ask to go pro-se, I am not prepared at this time for trial, because I do not know the rules and procedures to a New Mexico jury trial.' " 576 Fed.Appx. 820, 823 (10th Cir.2014). We concluded that the defendant had not made a clear, stand-alone self-representation request, as his motions could reasonably be read as "a request for conditional ... representation." *Id.*

Similarly, in *United States v. Smith,* the defendant made a self-representation request, but was unprepared for trial. 413 F.3d 1253, 1281 (10th Cir.2005). Even though the defendant did not request a continuance, we assumed that granting the request "would mandate another lengthy continuance to allow Mr. Smith to prepare for his own defense." *Id.*; *see also United State v. Tucker*, 451 F.3d 1176, 1181 (10th Cir.2006) (noting that in *Smith*, the need for a continuance was a "case-specific factor[ ] that made it proper for the district court to deny the defendant's motion").

We have also held that a defendant's request is not unequivocal when it simultaneously appears to request self-representation but adds a qualification that confuses what the defendant wants. For example, in *United State v. Callwood*, the defendant asserted that he preferred not to be represented by counsel, but he also said that he "at least" wanted to question a witness himself. 66 F.3d 1110, 1114 (10th Cir.1995). We noted that the defendant had "never made any other statement regarding his desire for self-representation." *Id.* at 1114. Thus, we held that the defendant had not unequivocally requested an opportunity to represent

himself.  *Id.*

       \* \* \*

Drawing on these opinions for guidance, we conclude that Mr. Simpson did not clearly and unequivocally say whether his self-representation motion was a conditional motion or a stand-alone motion.  We can draw two reasonable conclusions: (1) Mr. Simpson wanted to represent himself even without a continuance, or (2) he wanted to represent himself only if he obtained additional time.  We read the record with a presumption favoring exercise of the right to counsel; we do not presume that Mr. Simpson wanted to represent himself unprepared.

(Footnotes omitted.) *Simpson* at \*1048-49.

**{¶ 48}**  Finally, in *United States v. Austin*, 797 Fed. Appx. 233 (6th Cir.2019), Austin argued that "the district court violated his Sixth Amendment rights by delaying the grant of his self-representation request until the eve of jury selection and nearly three weeks after it was made, thereby depriving Austin of adequate time to meaningfully prepare for trial"; the Circuit Court found his claim to be baseless.  *Id.* at \*238.  Austin relied upon the Ninth Circuit's decision in *United States v. Farias*, 618 F.3d 1049, 1050-51 (9th Cir.2010), in which the defendant requested to represent himself one day before trial.  *Id.* at \*239.  The Sixth Circuit observed:

       \* \* \* The district court in *Farias* told the defendant that the trial would not be continued, and thus he would only have one day to prepare to represent himself.  *Id.*  As a result, the defendant proceeded to trial with counsel.  *Id.*  The Ninth Circuit vacated the defendant's conviction, finding

that the lower court had committed structural error by "foreclosing any possibility of a continuance" and thereby "effectively den[ying the defendant] the right to meaningfully represent himself." *Id.* at 1055. The Ninth Circuit proclaimed that "a right to proceed pro se without adequate time to prepare renders that right 'meaningless.' " *Id.* at 1054.

Contrary to Austin's argument, the facts in *Farias* are not comparable to the case at hand. Here, there was no suggestion to the district court that Austin lacked sufficient time to prepare to represent himself. To the contrary, Austin repeatedly told the court that he was prepared to proceed to trial while representing himself. On September 15, he told the district court that he "believe[d]" he knew his "case well" and was "prepared to defend" himself, * * * and on October 3, when the court asked Austin if he was "ready to defend" and "represent" himself, Austin responded, "Yes sir, I am". Not only did Austin never imply that he wanted a continuance, he affirmatively indicated to the court that one was not needed.

*Id.* at 239.

{¶ 49} Reading the record before us with a strong presumption favoring the exercise of the right to counsel, we conclude that under the totality of the circumstances, the trial court should have rejected Lee's request to proceed pro se. That is, accepting a waiver contingent upon a continuance without granting a continuance constitutes an abuse of discretion, particularly with unresolved discovery matters. We further conclude that the court's "wrong call" requires reversal for structural error. *See West*, 2d Dist. Greene No. 2015-CA-72, 2017-Ohio-7521, ¶ 47.

{¶ 50}   The equivocal and unclear nature of Lee's request for self-representation was demonstrated in the course of the colloquy at the waiver hearing and confirmed on the first day of trial.   At the conclusion of the court's explanation of the dangers and disadvantages of self-representation, the court found that Lee had "knowingly and voluntarily waived his right to counsel."   Lee, however, asserted that he felt "forced into this contract" and that he did not "consent to the contract."   Lee advised the court that he was "not being allowed to get all the discovery that [he was] supposed to have" and "should be allowed to view everything that's being said" against him.   He advised the court, "I do know that I have a right to get the discovery and be allowed to view this discovery and inspect this discovery."   In response, the court advised Lee, "make no mistake, we are going to trial on Monday," and "we're not going to postpone the trial to give you a chance to get *what you think* you haven't received yet, and we're going to proceed on Monday with competent counsel, or with you, depending on your decision here today." (Emphasis added).

{¶ 51}   The court inquired, "one final time, Mr. Lee, are you going to sign the waiver of counsel or not today?"   Lee then asked, "In signing this waiver, will I then be allowed to view these videos and go over these things * * *?"   The court advised Lee that it had "no control over that," that whether Lee was able to view discovery or not was between him and his counsel, and that the Court "declines to interfere with that."   When Lee responded that, as his own counsel, he "should be able to" to view discovery, the court advised Lee that the "exercise of those rights * * * must be made in a timely fashion. * * * We are not going to entertain anything that will delay this trial any further."

{¶ 52} As noted above, Lee initially expressed concern about the discovery issue

at the February 21, 2018 NGRI hearing, almost six months before trial. He asserted at that time that there was "stuff that [he] got in discovery today that [he] had never seen in ten whole months" and that there were videos that he had first seen with his attorney in "the last couple of days" that he had "never seen" previously. In the course of the waiver colloquy, Lee indicated to the court that he had been asking "to see the videos of every witness that has a audio/video" against him since the first time he came to court.

{¶ 53} We further note that while the trial court appeared to suggest that previous continuances were granted so that substitute counsel had the opportunity to prepare, one requested continuance was due to a scheduling conflict, and the trial court also rescheduled the trial due to the February 21, 2018 NGRI hearing.

{¶ 54} Lee further inquired, "if I'm representing myself, I still can't see the discovery, is that what's being said?" The court's response was largely unintelligible: "I'm sure that prior counsel will provide you with that information, whether they will not be any longer required to or able, frankly, to provide information on which you might review or listen to that, but we need to know whether you're going to - - I've answered all the questions I'm going to answer." Lee responded, "I would like to defend myself, and at the same time, I would like to be able to see the videos. I would like to be able to get the original interview documents * * *."

{¶ 55} The court then indicated, "Mr. Lee, last chance. Are you going to sign that waiver?" Lee responded, "I have all these disadvantages, yet * * * even if I sign the waiver, I don't even have the advantage of being able to see and go through and look at the evidence that's against me that's part of the discovery * * *." When the court indicated that Lee was "not willing to waive his right to counsel," Lee three times responded, "That's

not what I said."

**{¶ 56}** After a recess, and after Lee executed the written waiver, he immediately stated, "just to make part of the record, I agree to represent the Defendant, which is myself, *but not to proceed, because I'm not ready*.  I haven't seen the discovery * * * there's a lot of things in my discovery that I don't have in my possession."  Unlike the defendant in *Austin*, Lee emphasized, after reviewing the written waiver, that it did not "say anything about [his] being ready to proceed." He reiterated, "I don't have the discovery," and "I want to proceed in being counsel to represent myself.   I am not ready for trial, because I don't have the discovery."

**{¶ 57}** Lee's right to counsel herein necessarily invoked the court's protection.   As noted in *Albert*, 2d Dist. Montgomery No. 23148, 2010-Ohio-110, ¶ 12, this "protecting duty" imposed a "serious and weighty responsibility" upon the court of determining whether Lee's waiver was intelligent and competent.   *Id*., quoting *Von Moltke,* 332 U.S. 708, 723-724, 68 S.Ct. 316, 92 L.Ed. 309.    The court was required to conduct a "penetrating and comprehensive inquiry of the circumstances" surrounding Lee's request. *Id*. at ¶ 12.   This duty accordingly required a thorough examination of the case-specific factors herein.

**{¶ 58}**  The record establishes that Lee's date of birth was July 25, 1978.   Lee indicated at the waiver hearing that he was able to read and write, and in terms of education, he had obtained his GED.   The record indicates that he had been diagnosed with depression, anxiety, and post-traumatic stress disorder.

**{¶ 59}** As noted in *Hansen*, the degree of the trial court's thoroughness in its inquiry was required to correspond to the substantial and obvious dangers of self-representation.

Lee was facing an 11-count indictment which included murder, numerous counts of felonious assault, and multiple specifications, as well as a complex trial before a jury and essentially a life sentence. He indicated that he had no prior experience representing himself in court. When Lee expressed concern about having access to a law library, the court indicated that Lee would have the opportunity to inquire regarding the sheriff's policies of providing access (although there is no indication that such an opportunity was in fact afforded); when Lee raised the issue again, the court advised him that he would be able to object to preserve the issue for appeal. We conclude that the trial court failed to rigorously convey appropriate warnings regarding Lee's ability to conduct legal research.

{¶ 60} While Lee repeatedly stated that he was deprived of the right to view all of the discovery, the trial court did not inquire of Lee specifically what he had not seen; it also did not ask defense counsel to establish for the record the specific discovery or the extent thereof to which Lee had been given or denied access. Instead, the court stated, "make no mistake, we are going to trial on Monday."

{¶ 61} We agree with Lee that he equivocated at the waiver of counsel hearing in that he asserted his right to self-representation and yet disagreed with proceeding to trial the following Monday. We further conclude that the court bore an obligation to clear up the ambiguity in Lee's statements with further inquiry. We cannot conclude that Lee wanted to represent himself without a continuance of the trial, and we cannot conclude that Lee's equivocal statements constituted a valid waiver of his right to counsel. This is especially so in light of his repeated attempts to explain his lack of preparedness to proceed to trial. To the extent that the State suggests that Lee agreed on the morning

of trial to proceed pro se, such an assertion is belied by Lee's written and oral requests for a continuance and the lengthy exchange between Lee and the court regarding the discovery issues. We conclude that, in finding that Lee knowingly and voluntarily waived his right to counsel and in proceeding to trial, the court denied Lee the right to meaningfully represent himself.

{¶ 62} As noted above, the right to counsel serves both the individual and collective good. For the foregoing reasons, the record demonstrates structural error, and we accordingly sustain Lee's first assignment of error.

{¶ 63} Lee's second assignment of error is as follows:

THE RECORD DOES NOT CLEARLY AND CONVINCINGLY SUPPORT THE TRIAL COURT'S FINDING THAT CONSECUTIVE SENTENCES ARE NECESSARY TO PROTECT THE PUBLIC.

{¶ 64} As the State concedes, the trial court failed to make the statutory findings required to impose consecutive sentences. *See* R.C. 2929.14(C)(4). Nevertheless, our resolution of Lee's first assignment of error renders analysis of this assigned error moot.

{¶ 65} For the reasons discussed in the first assignment of error, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

FROELICH, J., concurs in judgment only:

{¶ 66} I do not necessarily disagree with either of my colleagues' interpretations of the record. There are parts that support a knowing, intelligent, and voluntary waiver of Lee's right to counsel and parts that support a conclusion that any waiver was conditioned

on receiving discovery and a trial continuance; this is true despite thorough and patient dialogues and explanations by the trial court.

{¶ 67} As noted by my colleagues, a defendant must " 'unequivocally and explicitly invoke' the right to self-representation." *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 29, quoting *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38. There is a strong presumption against waiver of the constitutional right to counsel, and trial courts are required to "indulge in every reasonable presumption against waiver of the right to counsel." *Id.*, quoting *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In light of this presumption and the lack of an "unequivocal and explicit" waiver by Lee, I concur in the judgment.

{¶ 68} Lee was convicted of heinous acts, and this opinion does nothing to minimize that. However, "the safeguards of liberty have frequently been forged in controversies involving not very nice people." *United States v Rabinowitz*, 339 U.S. 56, 59, 70 S.Ct. 430, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting).

TUCKER, P.J., dissents:

{¶ 69} In my opinion, the record supports the conclusion that Lee clearly and unequivocally waived his right to counsel. Based upon this conclusion, I dissent.

{¶ 70} No purpose is served by replowing the ground covered in the majority opinion. It is sufficient to note the following. First, a criminal defendant has a separate, distinct constitutional right to self-representation. *Faretta*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. This right creates tension with a defendant's right to counsel so that "there can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of [those Supreme Court] decisions holding that the

Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." *Id.* at 832, citing *Gideon*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. (Other citations omitted.) As conceded by the *Faretta* majority opinion, these decisions allow a "strong argument" that a "State may constitutionally impose a lawyer upon * * * an unwilling defendant." *Id.* at 833. But this argument was rejected because "it is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want." *Id.* The *Faretta* decision was also informed by the reality that, when a "defendant will not voluntarily accept representation by counsel, the potential advantages of a lawyer's training and experience can be realized, if at all, only imperfectly[,] [and] [t]o force a lawyer on a defendant [in such a circumstance] can only lead him to believe that the law contrives against him." *Id.*

{¶ 71} It is secondly noted that this tension has, quite appropriately, resulted in the requirement that before accepting a defendant's waiver of counsel, the trial court must engage in a painstaking discussion with the defendant to insure that the self-representation decision is knowing, intelligent, and voluntary. *Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93; *Hansen*, 929 F.3d 1238. This colloquy, known as a *Faretta* hearing, must include a review of the pending charges, the advantages of having counsel, and the pitfalls of self-representation, so that the defendant's choice is made with his "eyes open." *Obermiller* at ¶ 30, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed.2d 268 (1942). Finally, though each right is constitutionally protected, the case law, again quite appropriately, assumes a defendant

is better served with counsel; thus, the waiver of counsel must be "unequivocal and explicit," and, when making the waiver determination, a trial court is required to "indulge in every reasonable presumption against waiver of the right to counsel." *Id.* at ¶ 29, quoting *Brewer*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424.

{¶ 72} Turning to the pending case, at the end of the lengthy, comprehensive *Faretta* hearing, Lee balked at signing the waiver of counsel form. Lee's reluctance was based upon his assertion he had been denied access to discovery materials and thus was not prepared to proceed to trial. The trial court sensed, probably correctly, that Lee was trying to leverage the situation to obtain another trial continuance and declared that, "because of discovery issues, [Lee] is not willing to waive his right [to counsel]." In response, Lee immediately asserted "That's not what I said. That's not what I said sir." The trial court, without responding to Lee's declarations, announced a recess. At this point, the waiver had not been signed, and the trial was scheduled to begin the following Monday with Lee represented by counsel.

{¶ 73} Soon thereafter, within ten minutes or so, the hearing resumed with the trial court's statement that "Lee's perceived difficulties with discovery * * * [and his] prolonged reluctance to sign the waiver indicated his desire to proceed with counsel * * *." In response, Lee's counsel stated that Lee, in fact, desired "to execute the waiver of counsel"; Lee then signed the waiver of counsel but continued to insist that, because of discovery issues, he was not ready to proceed to trial. Lee's discovery concerns were not addressed, and the hearing was adjourned with Lee's having signed the waiver of counsel, knowing a continuance was not going to occur, but objecting to the trial beginning on Monday morning.

{¶ 74} On Monday morning, before the commencement of jury selection, the following exchange occurred regarding the issues of Lee's self-representation and his continued assertion that he had been denied access to discovery materials:

THE COURT: Can you assure the Court at this time that you continue to want to represent yourself in this case without a lawyer?

MR. LEE: Yes.

THE COURT: Okay.   Very well - -

MR. LEE: Excuse me.

* * *

MR. LEE: So, I just want to ask one question.   So I'm in - -

THE COURT: Sure.   Go ahead.

MR. LEE: So I'm bee - - I'm not - - I'm not able to view the rest of my discovery, just for the record?   I just want to know this - - that's the final verdict that I will not be able to see these videos and none of that, or be able to inspect for my own personal inspection.   Is that what the - - is that the decision?   Is that the Judge's decision in this matter, sir?

THE COURT: Well, it's an appellate issue.   If the prosecuting attorney has failed to provide you or your attorney with - -

MR. LEE: I am my attorney.

THE COURT: Please don't interrupt me.   Okay.   Hear me out then - - if the prosecuting attorney has failed to provide your lawyer or you with all lawful discovery, or if your lawyer or any previous lawyers in this case have failed to provide you with the discovery which they have received in this case,

then in each of those cases, those are appellate issues which we are not going to deal with here at the trial level. Okay. So, the discovery issues over [sic]. You've made your objections as to the discovery and we'll not hear about them again.

Yes.

MR. LEE: It was the point when I was making my objection I was cut off before I could finish my objection.

THE COURT: Well, we - -

MR. LEE: (Indiscernible) is trying to stop me and then gave the prosecution a opportunity to say what he had to say but, I was right because I prepared everything. I prepared - - I prepared it just, you know, for the purpose of my motions.

THE COURT: Well, you were - -

MR. LEE: And - -

THE COURT: - - for the record, to clarify, your objection regarding discovery is that either you have not been given it or it was not given to you in a timely fashion to prepare for trial; is that right?

MR. LEE: I have not seen it. My attorney has been given it - -

THE COURT: I.e., it was not given to you.

MR. LEE: Right. No, it was not given to me. No, it was not.

THE COURT: Okay. And that's your objection?

MR LEE: That is my objection. My objection is I don't have the discovery. Previous attorneys had it and they did not let me view it.

THE COURT: Yeah.   And - -

MR. LEE: I have never seen it.

THE COURT: And I understand that objection.

Thus, just prior to the commencement of the trial, Lee reaffirmed his desire to represent himself, and he was given an opportunity to lodge an objection concerning his purported inability to review witness videos generated during the police investigation and seemingly provided to defense counsel.   Based upon the exchanges that occurred the prior week and the morning of trial, Lee knew that the trial was going forward despite his desire to view witness videos before the trial began.   With this knowledge, he opted to represent himself.

{¶ 75} The majority opinion accepts Lee's assertions that his self-representation request was conditioned upon a trial continuance so that he could review the much-discussed videos, and that his waiver thus was not explicit and unequivocal.   From this, Lee asserts the trial court erred by accepting the waiver.   I, in contrast, conclude that the record compels the conclusion that Lee did not tie the self-representation demand to a trial continuance.   Lee asserted his right to self-representation and he wanted a trial continuance, but he knew the trial was not going to be continued.   With this knowledge, Lee, in an explicit and unequivocal fashion, waived his right to counsel, and then on the first morning of trial, reaffirmed the waiver.   In short, Lee made his decision with "eyes open," and, given this, the trial court did not err by not compelling Lee "to accept * * * lawyer[s] he [did] not want."   *Faretta,* 422 U.S. at 833, 95 S.Ct. 2525, 45 L.Ed.2d 562.

Upon this basis, I respectfully dissent.[1]

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Stephen P. Hardwick
Hon. Gregory F. Singer

---

[1] Based upon the fact that Lee's self-representation request was made a few days before the scheduled trial, I acknowledge that the trial court could have denied the request on this basis. *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 68, citing *United States v. Frazier-El*, 204 F.3d 553, 559 (4th Cir.2000). But as long as the request was knowing, intelligent, and voluntary, late notice does not mean that a trial court errs by allowing a self-representation request made shortly before a scheduled trial.